Bruce **HARDIMAN**, Appellant–Plaintiff,

v.

**GOVERNMENTAL INTERINSURANCE EXCHANGE, Appellee–Defendant.**

**No. 27A04–9109–CV–284.**

Court of Appeals of Indiana, Fourth District.

March 31, 1992.

Charles R. Clark, Beasley, Gilkison, Retherford, Buckles & Clark, Muncie, Jeffrey L. Arnold, McClellan, McClellan, Brooke & Arnold, Muncie, for appellant-plaintiff.

James S. Stephenson, Stephenson & Kurnik, Indianapolis, for appellee-defendant.

CONOVER, Judge.

Plaintiff–Appellant Bruce Hardiman (Hardiman) appeals from the grant of summary judgment in favor of Defendant–Appellee Governmental Interinsurance Exchange (G.I.E.) in his declaratory judgment suit to recover insurance benefits for injuries caused by an automobile accident. He seeks the full amount of underinsured motorist benefits despite receipt of worker's compensation benefits.

Hardiman presents only one issue:

1. whether the set-off provision for worker's compensation payments in G.I.E.'s underinsurance endorsement to its business automobile policy is enforceable against Hardiman's underinsured motorist claim.

We affirm.

The facts here are stipulated.

Hardiman, an employee of the City of Muncie (City), was injured when hit by an automobile while stepping off one of the City's garbage trucks. He received $58,-788.30 from the City's worker's compensation insurance carrier and a tender of policy limits, namely, $25,000 from Progressive Insurance (Progressive), the motorist's insurance company. Because Progressive also sought releases from Hardiman, his attorney, and the worker's compensation carrier, Progressive's tender was rejected.

G.I.E.'s policy contained a $60,000 underinsurance endorsement, but also provided for reduction of any underinsurance payment by the amount of any worker's compensation payments. It denied Hardiman's claim under the underinsurance endorsement. Hardiman then filed a declaratory judgment action seeking the difference between Progressive's $25,000 tender and G.I.E.'s $60,000 underinsurance limit, namely, an additional $35,000. The trial court held Hardiman was entitled to no underinsurance payment because the $58,-788.30 worker's compensation payment and the $25,000 policy limit tender totalled more than G.I.E.'s underinsurance coverage.

Hardiman appeals.

In reviewing the grant of a motion for summary judgment, our standard of review is well settled. We consider the contents of the pleadings, affidavits, answers to interrogatories, responses to requests for admission, and depositions in a light most favorable to the non-moving party to determine whether any genuine issue of material fact exists, and whether the moving party is entitled to judgment as a matter of law. When a motion for summary judgment is granted, the non-moving party is denied his day in court; therefore, the trial court's decision must be carefully scrutinized on appeal. In reviewing the granting of a motion for summary judgment this court stands in the shoes of the trial court and applies the same standard. *Progressive Constr. v. Ind. & Mich. Elec.* (1989), Ind.App., 533 N.E.2d 1279, 1282. Here, because both parties stipulated to the facts, we need only review whether G.I.E. is entitled to judgment as a matter of law. *See Progressive Constr., supra,* at 1282.

First, Hardiman contends the set-off clause in G.I.E.'s policy should not apply to the worker's compensation benefits he received because the auto policy provides only uninsured motorist coverage and defines an "underinsured" motorist as an uninsured motorist, a proposition which is contrary to law. He complains G.I.E.'s definition making underinsured, uninsured, should void the set-off clause. He further asserts since the insurance contract's language is ambiguous, it should be construed against the drafter, G.I.E.

G.I.E. contends Hardiman's argument not only ignores the policy's plain language, but conflicts with his stipulation the vehicle of the adverse driver, Wells, was an underinsured vehicle. G.I.E. argues because Hardiman failed to address the ambiguity issue at the trial court level, he has

thus waived any right to raise it on appeal. Alternatively, if he has not waived the issue, G.I.E. asserts its contract is not ambiguous, and not contrary to law.

■ Generally, a party may not raise an issue on appeal which was not raised in the trial court. *Fortmeyer v. Summit Bank* (1991), Ind.App., 565 N.E.2d 1118, 1120. This rule also applies to summary judgment proceedings.

The crucial factor, however, in determining whether Hardiman may inject what appears to be a new issue into the appeal is whether G.I.E. had unequivocal notice of the existence of the issue, and therefore, had an opportunity to defend against it. *See Id.* at 1121. Because G.I.E. had notice and an opportunity to defend against Hardiman's characterization of the insurance contract,[1] we will address Hardiman's meaning of underinsured.

■ G.I.E.'s auto policy defines:

An "uninsured motor vehicle" as a land motor vehicle or trailer:

(a) for which no liability bond or policy at the time of an accident provides at least the amounts required by Indiana financial responsibility law, or

(b) which is an underinsured vehicle.

(R. 41). Paragraph A(4)(b) of the endorsement provides underinsured coverage:

An underinsured motor vehicle is a motor vehicle for which the sum of all liability bonds or policies at the time of an accident provides at least the amounts required by Indiana financial responsibility law, but their limits are less than the limits of the insurance.

(R. 41). Paragraph E(2) of the endorsement, the set-off clause provides:

Any amount payable under this insurance shall be reduced by:

(a) All sums paid or payable under any *worker's compensation*, disability benefits or similar law, and

(b) All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's liability insurance.

(R. 42). We conclude G.I.E.'s policy entitled it to refuse to pay Hardiman's claim when he received a tender of policy limits of $25,000 from Progressive, the motorist's insurance company, and $58,788.30 in worker's compensation, from the City's carrier.

G.I.E.'s policy defining terms without regard to mandated statutory definitions is the turnkey here. IC 27-7-5-4(a) and (b) define the terms uninsured and underinsured. Subsection (a) defines uninsured motor vehicle as:

A motor vehicle without liability insurance or a motor vehicle not otherwise in compliance with the financial responsibility requirements of IC 9-25.

IC 27-7-5-4(a) (1991). Under subsection (b), an underinsured motor vehicle includes:

An insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident, *but does not include an uninsured motor vehicle* as defined in subsection a. (Emphasis supplied).

IC 27-7-5-4(b) (1991). Generally, a contract made in violation of a statute is void. *Hoffman v. Dunn* (1986), Ind.App., 496 N.E.2d 818, 822. However, at the time the contract was entered into, the Legislature had not yet passed IC 27-7-5-4(a) and (b). Therefore, the parties were free to contract as they wished. *Stone v. Manship* (1987), Ind.App., 505 N.E.2d 155, 159.

Also, the endorsement provides underinsured coverage, contrary to Hardiman's position. G.I.E.'s policy recognizes underinsured claims by (a) allowing a policy limit of $60,000, which is in excess of the statutory minimum, and (b) providing coverage in excess of recovery secured by the insured, up to the policy limit under paragraph B(2). Thus, under the endorsement, Hardiman could make a claim for injuries

---

1. Hardiman, both in the *trial court* and *on appeal,* has attempted to characterize the insurance contract as providing only uninsured motorist coverage, not underinsured motorist coverage. (Emphasis supplied).
Brief of Appellant at 5.

he sustained caused by the underinsured vehicle, subject to the limit of liability, $60,000.

Hardiman exhausted the monies available from Progressive when it tendered its limit of $25,000. Consequently, any amount payable by G.I.E. then became subject to paragraph E(2) of the endorsement, the set-off clause. Here, Hardiman received $58,788.30 in compensation for his worker's compensation claim. When his worker's compensation award is added to the underinsured policy limit tender, and the set-off endorsement is applied, Hardiman's net result equals zero. The trial court correctly determined he was not entitled to an additional $35,000.

Moreover, Hardiman stipulated to the terms of the contract with G.I.E. before the trial court awarded G.I.E. summary judgment. Hardiman agreed the uninsured motorists endorsement's definition of an uninsured motor vehicle included underinsured motor vehicles. Hardiman further agreed Wells's car was an underinsured vehicle because the coverage contained by Wells met financial responsibility requirements, but was less than the $60,000 limit under the uninsured motorist endorsement.

Hardiman has attempted to characterize G.I.E.'s policy as providing only uninsured, not underinsured motorist coverage. In doing so, he ignores (a) the plain language of the contract, and (b) his own stipulation that Wells drove an underinsured vehicle. Here, he clearly sought recovery for injury caused by an underinsured motorist. G.I.E. correctly set-off Hardiman's worker's compensation award pursuant to its business automobile policy.

█ Hardiman further contends G.I.E.'s policy is ambiguous. We disagree. A contract provision is considered ambiguous when reasonable persons, after reading the contract, differ as to the meaning of its terms. *Sharp v. Ind. Union Mut. Ins. Co.* (1988), Ind.App., 526 N.E.2d 237, 239, *trans. denied.* However, a contract is not ambiguous merely because a controversy exists, and one party's interpretation of the contract is contrary to that asserted by the opposing party. *Id.* A trial court's objec-

tive is to enforce the parties' intent as manifested by the insurance contract. *Evans v. National Life Accident Insurance Co.* (1984), Ind.App., 467 N.E.2d 1216, 1219.

Here, the policy's plain language was clear and unambiguous, contrary to Hardiman's claim. The trial court did not err when it enforced the parties' intent as manifested by the insurance policy.

█ Next, Hardiman contends G.I.E.'s non-revision of its policy fails to comply with our ruling in *Leist v. Auto Owners Insurance Co.* (1974), 160 Ind.App. 322, 311 N.E.2d 828, in which the carrier lumped uninsured and underinsured motorist coverage under the same endorsement, as G.I.E. did here. Further, Hardiman argues a set-off provision for worker's compensation benefits is void as against public policy where applied in an underinsured motorist claim. Hardiman's argument on this score is without merit.

In *Leist,* we held a provision in an automobile insurance policy requiring uninsured motorist payments to be reduced by worker's compensation payments was in derogation of the uninsured motorist statute. *Id.* 311 N.E.2d at 833. When we decided *Leist* in 1974, the uninsured motorist statute provided a statutory minimum of uninsured motorist coverage. Thus, insurers were not free to reduce the statutory minimum. *See* IC 9–2–1–15, IC 27–7–5–1.

Although the prohibition against reducing the statutory minimum remains, the statutory scheme has significantly changed since *Leist.* We have previously recognized the original statute's intent by holding the purpose of the statute was to require the minimum amount to be available to injured parties, so they would be placed in the same position they would have been in had the other driver complied with minimum requirements of financial responsibility laws. *Capps v. Klebbs* (1978), 178 Ind. App. 293, 382 N.E.2d 947, 951. However, Hardiman incorrectly relies on our holding in *Leist.* We decided *Leist* in the context of uninsured motorist claims. Underin-

sured claims were not contemplated by Indiana's statutory scheme at that time.[2]

Hardiman finally contends the use of a worker's compensation set-off clause violates public policy by reducing the amount of coverage that the Legislature mandated for all motorists. The public policy goal here is to ensure the injured party has been compensated fully. *See also, Capps, supra,* at 951. G.I.E. counters the only Indiana public policy concern applicable is that the statutory minimum of $25,000 be preserved.

More consistent with recent Indiana case law is G.I.E.'s view. Since Hardiman received the statutory minimum, we find G.I.E.'s application of the worker's compensation set-off provision does not violate public policy.

Affirmed.

MILLER and BARTEAU, JJ., concur.

**2.** Hardiman's accident happened on October 2, 1987. The uninsured motorist statute in effect at that time provided automobile policies had to provide uninsured motorist coverage at least in the amount required by the financial responsibility laws. *See* IC 27–7–5–2; IC 9–2–1–15. The minimum required amount being $25,000. The statute in effect during 1987 only applied to uninsured motorist coverage. Insurers were also allowed to offer coverage in excess of the $25,000 minimum. The previous statute simply specified uninsured motorist coverage should be available in the amount of $25,000.

The legislature amended this statute, and the revised version went into effect on January 1, 1988. The statute now applied to uninsured and underinsured motorist coverage. *See* IC 27–7–5–2; IC 27–7–5–4. IC 27–7–5–4 previously did not include the definition of an underinsured motor vehicle.

IC 27–7–5–5, the so called "stacking provision," was also amended at this time to apply to underinsured motorist claims. Neither the current statutory scheme, nor the one in effect in 1987, existed at the time we decided *Leist.* The previous statute referred to in *Leist* provided automobile policies had to offer uninsured motorist coverage in the minimum amount required by financial responsibility laws.