TRANSCONTINENTAL TECHNICAL SERVICES, INC.; Transportation Insurance Company; and CNA Insurance Companies, Appellant–Defendants,

v.

Corbett ALLEN and Ruth Allen, Appellee–Plaintiffs.

No. 45A04–9404–CV–128.

Court of Appeals of Indiana, Fourth District.

Nov. 15, 1994.

Transfer Denied March 9, 1995.

Robert D. Brown, Spangler, Jennings & Dougherty, Merrillville, for appellants.

Thomas A. Clements, Saul I. Ruman, Ruman, Clements, Tobin & Holub, Hammond, for appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendants–Appellants Transcontinental Technical Services, Inc., Transportation Insurance Company, and CNA Insurance Companies (collectively, Insurer) appeal the grant of summary judgment in favor of Plaintiffs–Appellees Corbett and Ruth Allen (collectively, Allen).

We affirm.

### ISSUES

The following issue is dispositive: whether the trial court erred in finding the worker's compensation set-off ambiguous.

### FACTS AND PROCEDURAL HISTORY

The parties in this case stipulated to the relevant facts to permit the trial court to determine the legal issues raised in Insurer's motion for summary judgment. The following facts were stipulated by the parties and relied on by the trial court in rendering its decision.

Corbett Allen was employed by Wilgus Allen Enterprises, Inc. (Wilgus) as a tow-truck operator. On January 9, 1991, while operating his tow-truck, Allen was struck and injured by an automobile driven by Emilse Jones. As a result of this accident, Allen received injuries resulting in damages in excess of $500,000.

Jones was insured for liability with State Farm Insurance Company, with coverage limits of $50,000. State Farm paid the $50,000 to Allen for injuries resulting from the accident. Because the injuries occurred during the course and scope of his employment with Wilgus, he received worker's compensation benefits of $206,525.

Insurer issued a contract of insurance to Wilgus which contained underinsured motorist coverage with limits of $500,000. In making payment to Allen under the contract, Insurer reduced its $500,000 underinsured liability limit by the $50,000 in liability coverage and by the $206,525 in worker's compensation benefits paid to Allen. After taking these set-offs, Insurer paid Allen $243,475 in underinsured motorist benefits. (R. 64–65).

The contract stated the following:

A. COVERAGE

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle."

(R. 61).

D. LIMIT OF INSURANCE

2. The Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under this Coverage Form's LIABILITY COVERAGE.

3. Any amount payable for damages under this coverage shall be reduced by all sums paid or payable under any worker's compensation, disability benefits or similar law.

(R. 62).

■■■ The trial court denied Insurer's summary judgment motion and ruled that, as a matter of law, Allen was entitled to sum-

mary judgment. The trial court's ruling was based on its determination that the language of the policy was ambiguous.[1]

## DISCUSSION AND DECISION

■■■ Summary judgment is appropriate when the evidentiary matter designated to the trial court shows no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Fawley v. Martin's Supermarkets, Inc.* (1993), Ind.App., 618 N.E.2d 10, 12, *trans. denied*. When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party. T.R. 56(B). Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Fawley*, 618 N.E.2d at 12.

■■■ "The provisions of an insurance contract are subject to the same rules of construction as other contracts, and construction of a written contract is a question of law for which summary judgment is particularly appropriate." *Delaplane v. Francis* (1994), Ind.App., 636 N.E.2d 169, 171. Interpretation of an insurance contract is a question of law even if the contract contains an ambiguity needing resolution. *Eli Lilly & Co. v. Home Insurance Co.* (1985), Ind., 482 N.E.2d 467, 471, *cert. denied* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987). It is only where a contract is ambiguous and its interpretation requires extrinsic evidence that the fact finder must determine the facts upon which the contract rests. *Id.* An insurance contract is ambiguous "when it is susceptible to more than one interpretation and reasonably intelligent men would honestly differ as to its meaning." *Harden v. Monroe Guaranty In-*

---

1. Insurer notes that Allen did not discuss the issue of ambiguity in its response to Insurer's motion for summary judgment. Insurer contends that Allen's failure to address the ambiguity issue at the trial court level results in waiver of the issue on appeal.

Generally, a party may not raise an issue on appeal which was not raised in the trial court. *Hardiman v. Governmental Interinsurance Exchange* (1992), Ind.App., 588 N.E.2d 1331, 1333,

*trans. denied.* This rule also applies to summary judgment proceedings. *Id.* However, where an opposing party has unequivocal notice of an issue, the issue may be considered on appeal. *Id.*

In the present case, Insurer itself raised the ambiguity issue in its motion for summary judgment. Insurer obviously had notice of the issue, and cannot now say that the issue of ambiguity is waived.

*surance Co.* (1993), Ind.App., 626 N.E.2d 814, 817, *trans. denied* (quoting *Anderson v. State Farm Mutual Automobile Insurance Co.* (1984), Ind.App., 471 N.E.2d 1170, 1172). If there is an ambiguity, an insurance contract should be interpreted most favorably to the insured. *Eli Lilly,* 482 N.E.2d at 470. The contract should be construed to further its basic purpose of indemnity. *Id.*

In the present case, Insurer asserts that the contract language unambiguously establishes that the reduction for worker's compensation should be made from the $500,-000 limit of liability. It asserts that even though the language of Paragraphs 2 and 3 differs, both Paragraphs require reduction from the $500,000 limit. Allen contends that the contract language at a minimum establishes an ambiguity which must be resolved in favor of payment to the injured party. Allen argues that the reduction for worker's compensation paid should come from the total damages resulting from his injuries, with a cap of $450,000 ($500,000 minus the $50,000 reduction required by Paragraph 2).

In Paragraph 2, the contract clearly states that sums paid or payable by the party responsible for the injuries are to be subtracted from the "Limit of Insurance". The parties agree that Paragraph 2 unequivocally requires sums of this type to be subtracted from the $500,000 contract limit. The controversy arises from the language of Paragraph 3, which provides that sums paid or payable under the worker's compensation law must be subtracted from "[a]ny amount payable for damages under this coverage."

At least two reasonable conclusions can be drawn as to meaning of Paragraph 3. The first conclusion, as argued by Insurer, is that even though worded differently, both paragraphs mandate reduction from the $500,000 limit of liability. The second conclusion is that the "[a]ny amount payable for damages under this coverage" language refers back to the initial "Coverage" section, wherein Insurer promises to pay "all sums the 'insured' is

legally entitled to recover as compensatory damages from the owner or driver of an ... underinsured motor vehicle." This second conclusion becomes even more reasonable in light of the language of Paragraph 2, which demonstrates Insurer's ability to unambiguously require reduction from the $500,000 limit of liability if such reduction is required.

We find that the provisions of the contract are susceptible to more than one interpretation. Furthermore, reasonably intelligent men and women could honestly differ over which interpretation is correct. Accordingly, by definition, the language of the contract is ambiguous and the trial court was correct in adopting the interpretation which furthered the purpose of indemnity.

Insurer argues that resolution of this issue is mandated by our supreme court's holding in *American Economy Insurance Co. v. Motorists Mutual Insurance Co.* (1992), Ind., 605 N.E.2d 162. In *American Economy,* the court held that "amounts payable" referred to in a contract section delineated as "OUR LIMIT OF LIABILITY" referred to the policy limit rather than the amount of total damages. *Id.* at 164. The court compared the language of the American Economy contract with similar language considered in *Tate v. Secura Insurance* (1992), Ind., 587 N.E.2d 665, wherein "amounts payable" was held to refer to the amount of total damages. The court concluded that the unambiguous, clearly delineated provisions of the American Economy contract differed significantly from the ambiguous provisions of the Secura contract. *American Economy,* 605 N.E.2d at 164. As discussed above, the language of the present contract is ambiguous. Thus, *Tate,* rather than *American Economy,* is applicable.[2]

## CONCLUSION

The language of Paragraph 3 is ambiguous and should be interpreted in a manner which furthers the purpose of indemnity. As a

---

**2.** Insurer contends that under *American Economy* any reduction clause located in a "limit of liability" section must be interpreted to mandate reduction from the contract limits. As we noted in *Delaplane,* the location of an ambiguous re-

duction clause within such a section is not dispositive. 636 N.E.2d at 172. *American Economy* is applicable only when the language of the contract is unambiguous.

matter of law, the trial court's grant of summary judgment was proper.

Affirmed.

HOFFMAN, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I respectfully dissent. The Majority creates an ambiguity in the insurance policy by reading the limitations in paragraphs D(2) and D(3) in conjunction with each other. To do so is impermissible. As our supreme court has stated:

> [Exclusions] are limitations or restrictions on the insuring clause.... [E]ach exclusion is meant to be read with the insuring agreement, independently of every other exclusion. If any one exclusion applies there should be no coverage, regardless of the inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions.

*Indiana Insurance Co. v. DeZutti* (1980), Ind., 408 N.E.2d 1275, 1278. When considered independently of any other limitation, and in the context of the insuring agreement, the meaning of paragraph D(3) is clear: it excludes from the "limit of insurance" amounts paid or payable to a policyholder under the worker's compensation law.

Because the language of the limitation contained in Paragraph D(3) of Allen's policy is unambiguous, the trial court's entry of summary judgment in Allen's favor should be reversed, and this case remanded with instructions to grant Insurer's summary judgment motion.