**Donald ANSERT, By and Through Joan ANSERT, His Legal Guardian, Appellant,**

v.

**INDIANA FARMERS MUTUAL INSURANCE COMPANY,**
Appellee.

No. 10A05–9502–CV–33.

Court of Appeals of Indiana.

Dec. 19, 1995.

Rehearing Denied Feb. 21, 1996.

---

Daniel R. Marra, Jeffersonville, for Appellant.

John B. Drummy, Kightlinger & Gray, Indianapolis, Rodney L. Scott, Kightlinger & Gray, New Albany, for Appellee.

## OPINION

SHARPNACK, Chief Judge.

Donald Ansert, by and through his legal guardian Joan Ansert, appeals the trial court's granting of summary judgment in favor of Indiana Farmers Mutual Insurance Company ("Farmers"). Farmers is seeking a declaratory judgment to determine its obligations under an insurance policy. We consolidate and restate the issues raised on appeal as:

(1) whether the insurance policy's underinsured motorist coverage should be reduced by other sources of compensation.

(2) whether the insurance policy's anti-stacking provision violates public policy; and

(3) whether Ansert is entitled to punitive damages.

We reverse in part and affirm in part.

### FACTS

The facts most favorable to Ansert, the nonmoving party, follow. On the morning of April 11, 1992, Donald Ansert was seriously injured when his car collided with another car driven by William Adams. Prior to the accident, Ansert executed an insurance policy with Farmers which provided coverage for Ansert's personal automobiles. This insurance policy was in effect at the time of Ansert's accident. The insurance policy covered three vehicles, one of which was involved in the accident. The policy provided a $500,000 limit for underinsured motorist coverage on each vehicle.

The contact provided in part:

"COVERAGE C– UNINSURED MOTORIST COVERAGE

We shall pay damages for bodily injury and property damage which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury or property damage must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle.

\* \* \* \* \* \*

Underinsured Motorists Coverage shall not apply to the benefit of any insurer or

self insurer under any workers' compensation or disability benefits law or any similar law.

LIMITS OF LIABILITY

If the limit of liability in the Declaration is shown separately for 'each person' and 'each accident':

(1) The limit for 'each person' is the maximum for bodily injury sustained by any person in any one accident.

(2) Subject to the limit for 'each person', the limit for 'each accident' is the maximum for bodily injury sustained by two or more persons in any one accident.

\* \* \* \* \* \*

We will pay no more than these maximums regardless of the number of vehicles described in the Declarations, insured persons, claims, claimants, policies, or vehicles involved in the accident.

If the limit of liability in the Declaration is not shown separately for 'each person' and 'each accident':

(1) The limit of liability for this coverage is our maximum limit of liability for all damages resulting from any one accident.

We will pay no more than these maximums regardless of the number of vehicles described in the Declarations, insured persons, claims, claimants, policies, or vehicles involved in the accident.

\* \* \* \* \* \*

Under either section above, the following provisions also apply:

*Any amounts payable* will be reduced by:

(1) a payment made by the owner or operator of the uninsured motor vehicle or organization which may be legally liable.

(2) all sums paid because of bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part I–Liability Coverage or Part IV–Car Damage.

(3) a payment made or amount payable because of the bodily injury under any workers' compensation law or disability benefits law or similar law.

Record, pp. 16–17 (emphasis added).

Prior to the present case, Ansert has filed other actions to recover for his bodily injuries resulting from this accident. First, Ansert has filed a worker's compensation claim. At the time of the accident, Ansert was driving a car which was owned and registered by his corporation, Ansert Mechanical Contractors ("AMC"). Ansert contends that on the day of the accident, he was acting within the scope of his employment. Ansert's worker's compensation claim indicates that he requested reimbursement for medical expenses of $436,999.59 incurred through April 30, 1994.

Second, Ansert has filed an action against Federal Insurance Company ("Federal Insurance") which provided underinsured motorists coverage of one million dollars for AMC.

Third, Ansert has filed an action against Adams, the tortfeasor. Adams was insured by State Farm Mutual Insurance Company for $100,000 in liability coverage.

On August 21, 1993, Farmers filed a declaratory judgment complaint to determine whether it was obligated to pay anything to Ansert under his policy. On July 25, 1994, Farmers filed a motion for summary judgment. The dispute eventually focused on whether Ansert could recover on his underinsured motorist coverage. Farmers contended that Ansert had already recovered from other sources. Farmers argued that although Ansert did have underinsured motorist coverage, Farmers' limit of liability was reduced by all payments by those legally responsible to Ansert. Ansert responded that the underinsured motorist coverage provided excess coverage and could not be set off by prior recoveries. Because Ansert's damages exceeded his prior recoveries, he argued that Farmers is obligated to cover the rest of his damages. In addition, Ansert filed a counterclaim against Farmers seeking punitive damages.

On October 18, 1994, the trial court granted Farmers' motion for summary judgment, and Ansert appeals this decision.

## DISCUSSION

■ When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court. *Ayres v. Indian Heights Volunteer Fire Department, Inc.* (1986), Ind., 493 N.E.2d 1229, 1234. "The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." *Id.* Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630, 633. "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313, 318.

### I.

Ansert contends that the trial court erred in granting summary judgment based on its interpretation of the "amount payable" provision of the underinsured motorist coverage. He contends that Farmers' insurance policy is ambiguous and cannot be interpreted to allow a reduction in the amount recovered from other sources of compensation. Ansert points to Part III of the policy which states:

"Under either section above, the following provisions also apply:

Any *amount payable* will be reduced by:

(1) a payment made by the owner or operator of the uninsured motor vehicle or organization which may be legally liable.

(2) all sums paid because of bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part I–Liability Coverage or Part IV–Car Damage.

(3) a payment made or amount payable because of the bodily injury under any workers' compensation law or disability benefits law or similar law."

Record, p. 17.

Ansert contends the "amount payable" provision can be construed to be a reduction of the total damages that Ansert received as a result of the accident. Because Ansert was seriously injured in the accident, his damages could exceed $3,000,000. Ansert contends that the trial court construed the "amounts payable" provision to be a limit on Ansert's recovery against Farmers. Essentially, the court determined that the reduction provision of the insurance policy precluded payment because the setoffs from Ansert's prior recoveries were greater than Ansert's underinsured motorist coverage.

■ Farmers argues that Ansert failed to raise this argument before the trial court and now, raises it for the first time on appeal. Therefore, Farmers contends that the Ansert has waived this argument. Generally, a party may not raise an issue on appeal which was not raised in the trial court. *Hardiman v. Governmental Interinsurance Exchange* (1992), Ind.App., 588 N.E.2d 1331, 1333, *trans. denied.* This rule also applies to summary judgment proceedings. *Id.* However, where an opposing party has unequivocal notice of an issue, that issue may be considered on appeal. *Id.; see also Transcontinental Technical Services, Inc. v. Allen* (1994), Ind.App., 642 N.E.2d 981, 983 n. 1, *trans. denied.*

■ In the present case, Farmers raised the ambiguity issue in its motion for summary judgment. In its motion, Farmers argues that this dispute is "simply a matter of contract interpretation." Record, p. 115. It then quotes the "amount payable" provision and concludes that this provision is unambiguous. Specifically, Farmers states, "[t]hese unambiguous set-off provisions are valid and enforceable in Indiana." Record, p. 118.

■ When a party raises an issue of ambiguity in its own motion for summary judgment, that party had notice of the issue and cannot argue on appeal that the issue has been waived. *Allen,* 642 N.E.2d at 983 n. 1. Therefore, we will consider Ansert's argu-

ment that the "amounts payable" provision of the insurance policy was ambiguous.

The interpretation of an insurance policy, as with other contracts, is primarily a question of law for the courts to decide, even when the policy contains an ambiguity in need of resolution. *Tate v. Secura Insurance Co.* (1992), Ind., 587 N.E.2d 665, 668. However, when extrinsic evidence is required to resolve an ambiguity, the interpretation of a contract becomes a question for the fact finder. *Id.* Where an insurance policy is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* If there is an ambiguity, the policy should be interpreted most favorably to the insured. *Id.* The insurance policy should be construed to further the policy's basic purpose of indemnity. *Id.*

In *Tate,* the supreme court addressed the issue raised in the present case. Tate was seriously injured when he was struck by a drunk driver. *Id.* at 667. Tate settled with the driver for $50,000, the maximum payable under the driver's liability coverage. *Id.* Tate's total damages were over $100,000, and he asserted a claim pursuant to his underinsured motorist coverage of his insurance policy. Tate's policy contained the following provision:

"PART III–UNINSURED MOTORISTS COVERAGE AND UNDERINSURED MOTORISTS COVERAGE

\* \* \* \* \* \*

COVERAGE C–2 UNDERINSURED MOTORISTS COVERAGE

We will pay damages which an *insured person* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle* because of *bodily injury* sustained by an *insured person* and caused by an accident.

\* \* \* \* \* \*

ADDITIONAL PROVISIONS APPLICABLE TO PART III ONLY

\* \* \* \* \* \*

A. Definitions

As used in this part:

\* \* \* \* \* \*

3. *"Underinsured motor vehicle"* means a land motor vehicle or trailer, which is insured by a liability policy or bond at the time of the accident which provides *bodily injury* liability limits less than the amount of total damages an *insured person* is legally entitled to recover but which are uncompensated because the damages exceed those limits.

\* \* \* \* \* \*

D. Reductions in the Amount Payable

Amounts payable will be reduced by:

1. Amounts paid because of the *bodily injury* by, or on behalf of, persons or organizations who may be legally responsible."

*Id.* at 667–68 (original emphasis). Tate's underinsured motorist coverage had a maximum liability of $50,000 per person and $100,000 per occurrence. *Id.*

Tate contended that pursuant to his underinsured motorist coverage, the insurance company, Secura, was obligated to pay the full amount of his damages less $50,000, the amount recovered from the tortfeasor. *Id.* at 667. However, Secura contended that the underinsured motorist coverage was a limit on Tate's recovery and, therefore, Tate's prior recovery from the tortfeasor precluded payment by Secura. *Id.*

The trial court granted summary judgment in favor of Secura. *Id.* We affirmed the trial court's judgment, holding that the "amount payable" provision unambiguously referred to the policy limit. *Id.* The dissent also declared the "amount payable" provision to be unambiguous, but asserted the provision provided underinsured motorist coverage for damages to the extent they exceeded the tortfeasor's liability coverage. *Id.*

The supreme court resolved this issue against Secura. The court stated:

"By failing to clearly express a contrary meaning, Secura is bound by the plain and ordinary meaning of its words as viewed from the standpoint of the insured. We find the phrase "amounts payable" to refer to the initial insuring agreement for Coverage C–2 Underinsured Motorists Coverage

wherein Secura promises to pay such bodily injury damages as its insured is legally entitled to recover from the operator of an underinsured motor vehicle. It is this amount of damages, not the coverage limit, which is the "amounts payable" to be reduced by the amount paid to Tate by or on behalf of the tortfeasor.

\* \* \* \* \* \*

We therefore conclude that Tate's underinsured motorist coverage limits do not bar his claim. We agree with the analysis of [the dissent], and find that the contract provides Tate with underinsured motorist coverage for his bodily injury damages, to the extent these damages exceed the tortfeasor's liability coverage, up to the limits of Tate's own underinsured motorists coverage. Secura is not entitled to summary judgment on this issue."

*Id.* at 668–69.

Farmers distinguishes *Tate* by pointing out that the "amount payable" provision in *Tate* was not located in a separate section of the policy entitled "limits of liability", causing it to be ambiguous. In contrast, Farmers' "amount payable" provision is placed under the limits of liability section. Therefore, Farmers argues that this provision is not ambiguous.

Farmers' cites to *American Economy Insurance Co. v. Motorists Mutual Insurance Co.* (1992), Ind., 605 N.E.2d 162, for support. In *American Economy,* the supreme court reviewed the language of the underinsured motorists coverage found in two insurance policies. *Id.* at 163. The dispute focused on an automobile accident involving a driver insured by Motorists Mutual Insurance Company ("Motorists") who was driving a borrowed automobile insured by American Economy Insurance Company ("American"). *Id.*

The court found the language of these insurance policies to be distinguishable from

Secura's policy. *Id.* at 164. American's limit of liability section provided in part:

"2. Any amount payable under this insurance shall be reduced by:

... b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE."

*Id.*[1]

Similar to American's policy, the court found that Motorists' policy articulated a specific limitation of liability in a reduction clause of its underinsured motorist coverage. *Id.* Motorists' limit of liability section provided:

"Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the bodily injury or property damages by or on behalf of persons or organizations who may by legally responsible."

*Id.*[2]

The court found that Secura's "amount payable" provision differed "significantly from the more clearly delineated provisions of American and Motorists which express 'amounts payable' as a sum limited to uninsured motorists coverage limits." *Id.* The court concluded, "[b]ecause this disparity between Secura's policy language and that of American and Motorists leads to divergent constructions of 'amounts payable,' the result in *Tate* governing 'amounts payable' does not obtain in the present case." *Id.*

In Farmers' policy, the "amount payable" provision, does appear within its "limit of liability" section. Further, Farmers' "amount payable" provision is similar to the provisions of *American Economy.* Therefore, we would be inclined to agree with Farmers' contention that *American Economy,* rather than *Tate,* controls the construction of its "amount payable" provision.

However, we have recently addressed this issue again in *Delaplane v. Francis* (1994),

---

1. The court also noted that this same endorsement also qualifiedly defined "underinsured motor vehicle" as "a land motor vehicle or trailer ... [W]hich is an underinsured motor vehicle." *Id.*

2. The court also noted that this same endorsement qualifiedly set forth that "underinsured motor vehicle," in part, "shall also include underinsured motor vehicle...." *Id.*

Ind.App., 636 N.E.2d 169, *trans. denied.*[3] In *Delaplane,* American Family Insurance Company ("American Family") moved for summary judgment asking the court to interpret the "reduction clause" of its underinsured motorist coverage endorsement. *Id.* at 170. The trial court denied this motion and found that the amount paid by other liable persons should not be deducted from the plaintiffs' total damages for bodily injury. *Id.* at 171. American Family appealed arguing that there was no genuine issue of material fact regarding maximum liability because the policy provision lead to only one interpretation, that payment received from other liable persons were to be deducted from the insurance coverage limit. *Id.*

> American Family's policy provided in part:
> "UNDERINSURED MOTORISTS (UIM) COVERAGE ENDORSEMENT
> We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle.
>
> . . . . .
>
> ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT ONLY
>
> . . . . .
>
> 3. Underinsured motor vehicle means a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the damages an insured person is legally entitled to recover.
>
> . . . . .
>
> LIMITS OF LIABILITY
> The limits of liability shown in the declarations apply, subject to the following:
> 1. The limit for each person is the maximum for bodily injury sustained by one person in any one accident.
> 2. Subject to the limit for each person, the limit for each accident is the maximum for bodily injury sustained by two or more persons in any one accident.
> We will pay no more than these maximums no matter how many vehicles are described

in the declarations, insured persons, claims, claimants or policies or vehicles are involved in the accident.

> Any amounts payable will be reduced by:
> 1. A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle."

*Id.* at 170–71.

American Family argued that its underinsured motorist provision was not ambiguous. *Id.* at 172. Further, it contended that *Tate* was not controlling because its "reduction clause" was located in a separate section of the policy entitled "Limits of Liability." *Id.*

We resolved this issue against American Family, and stated:

> "We find that the language of the American Family policy is similar to the ambiguous language in *Tate.* The fact that American Family's reduction clause is located in a separate section of the policy entitled 'Limits of Liability' is not dispositive and does not render the contract unambiguous. *See Allstate [Ins. Co. v. United Farm Bureau Mutual Ins. Co.* (1993), Ind.App.], 618 N.E.2d [31] at 33 (in determining the amount due for loss under an insurance policy, the true meaning of the contract must be ascertained from all of its provisions, and not from the literal or technical construction of an isolated or special clause.) Furthermore, American Family's argument that this case should be determined under *American Economy Ins. Co. v. Motorists Mut. Ins. Co.* (1992), Ind., 605 N.E.2d 162, is not supported. The language of the *American Economy* policy differs from that of the American Family contract. *See id.* at 164 (policy language).

> We conclude that the plain meaning of the phrase 'amounts payable' refers to the amount of Francis' total bodily damages, not the coverage limit, which is to be re-

3. We have also addressed this issue in *Allen,* 642 N.E.2d at 981.

duced by the amount paid to Francis by other legally liable persons."

*Id.* at 172–73 (footnotes omitted).

We find that the language of Farmers' "amount payable" provision parallels the provision in *Delaplane.* Therefore, we must follow the analysis of *Delaplane* to conclude that Farmers' "amount payable" provision refers to the amount of Ansert's total bodily damages, rather than a coverage limit.

Although we ultimately resolve this issue in favor of Ansert, we are of the opinion that there is a lack of clarity among the aforementioned authorities. While the supreme court has addressed this issue concerning "amount payable" provisions, further guidance is necessary. We hold that Farmers is not entitled to summary judgment on this issue.

## II.

Ansert contends the trial court erred when it failed to find that the insurance policy's anti-stacking provision violates public policy. The insurance policy covered three vehicles with a $500,000 limit for underinsured motorist coverage on each vehicle. Ansert paid a separate premium for each vehicle.

Ansert argues that at the time he purchased the policy, he believed he was purchasing cumulative coverage. Therefore, he contends the separate premiums on the three vehicles entitles him to aggregate the individual vehicle coverages. Essentially, Ansert argues that the policy limit on his coverage is $1,500,000, rather than $500,000. Ansert does not contest that the clear language of the insurance policy contradicts the stacking of coverage. Rather, Ansert argues that this anti-stacking language violates public policy and cannot be enforced.

 Contrary to Ansert's contentions, anti-stacking provisions are enforceable. In *American Economy Insurance Co. v. Motorists Mutual Insurance Co.,* we held that anti-stacking provisions were valid and enforceable under Indiana's statutory law concerning underinsured motorist coverage. *American Economy Insurance Co. v. Motorists Mutual Insurance Co.* (1992), Ind.App., 593 N.E.2d 1242, 1244–45, *reversed as to other*

*grounds by American Economy Insurance Co. v. Motorists Mutual Insurance Co.* (1992), Ind., 605 N.E.2d 162. Specifically, we stated:

"Pursuant to Ind.Code § 27–7–5–5:

'(a) The policy or endorsement affording [underinsured motorists coverage] may provide that the total limit of all insurers' liability arising out of any one (1) accident shall not exceed the highest limit under any one (1) policy applicable to the loss . . .'

In *High v. United Farm Bureau Mutual Insurance Co.* (1989), Ind.App., 533 N.E.2d 1275, the first district considered whether Farm Bureau was entitled to summary judgment based upon a clause in the insurance policies which precluded the stacking of uninsured motorist coverages. The *High* court held that 'under Indiana law an insurance company may limit underinsured motorist coverage with an anti-stacking clause.' *Id.* at 1278. The court reasoned that, by adding I.C. § 27–7–5–5 to the Underinsured Motorists Statute, the legislation changed the public policy of Indiana concerning anti-stacking clauses, determined anti-stacking clauses no longer offend public policy, and specifically authorized anti-stacking provisions. *Id.*"

*Id.* at 1245. The supreme court affirmed our decision in *American Economy,* 605 N.E.2d 162, 165.

According to the plain language of the policy, there is a $500,000 limit on Ansert's underinsured motorist coverage. A declaratory judgment to that effect was appropriate.

## III.

 Ansert contends that the trial court erred in denying his counterclaim for punitive damages. However, Ansert fails to provide a cogent argument that the dismissal of his counterclaim was improper. Further, he fails to provide adequate citations to cases or statutes in support of his contentions. Pursuant to Ind.Appellate Rule 8.3(A)(7), Ansert has waived this issue on appeal. *See Keller v. State* (1990), Ind., 549 N.E.2d 372, 373.

For the forgoing reasons we reverse the judgment of the trial court in part and re-

mand this cause for further proceedings not inconsistent with this opinion.

REVERSED IN PART AND REMANDED.

RUCKER and CHEZEM, JJ., concur.