Gerald W. SUTTON, Lisa Sutton,
Appellants–Plaintiffs,

v.

Wilma Faye LITTLEPAGE and Allstate
Insurance Companies, Appellees–
Defendants.

No. 82A04–9603–CV–97.

Court of Appeals of Indiana.

Aug. 8, 1996.

Rehearing Denied Sept. 25, 1996.

Mark W. Rietman, Berger and Berger,
Evansville, for Appellants–Plaintiffs.

Lani A. Ethridge, Price, Bradley & Collins, Evansville, for Appellees–Defendants.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiffs-Appellants Gerald W. and Lisa Sutton (collectively, the Suttons) appeal the

trial court's grant of summary judgment in favor of Defendant–Appellee Allstate Insurance Company (Allstate).

We reverse.

### ISSUES

The Suttons raise four issues for our review, which we consolidate and restate as:

1. Whether underinsurance policy limits should be reduced by the amount of payments from worker's compensation and the tortfeasor's insurer.

2. Whether a payment made pursuant to the underinsurance coverage indirectly benefitted the worker's compensation carrier.

3. Whether the Suttons unreasonably delayed giving notice of their claim.

### FACTS AND PROCEDURAL HISTORY

On May 24, 1990, Gerald Sutton (hereinafter, Sutton) was operating a bus owned by the City of Evansville. The bus was struck by an automobile driven by Wilma Littlepage, and Sutton was seriously injured.

Because the accident occurred during the course of Sutton's employment with the City of Evansville, Sutton was eligible for worker's compensation benefits. He received benefits for his medical treatment and care in the sum of $54,678.31. He also received temporary total disability payments in the sum of $11,222.28.

On May 21, 1992, the Suttons filed suit against Littlepage, asserting a claim for Sutton's physical injuries and his wife's loss of services and consortium. In their complaint, they alleged that Littlepage's negligent operation of her automobile caused the injuries and attendant losses. The Suttons joined their insurer, Allstate, as a party to the suit. The complaint alleged that the Suttons were entitled to recover under the underinsurance coverage of their policy with Allstate.

Subsequent to the filing of the complaint, Littlepage's insurer, National Insurance Association (National), paid the policy liability limit of $25,000.00. Littlepage was then dismissed from the case.

Allstate filed a motion for summary judgment alleging that under the language of its insurance policy with the Suttons, the amounts paid by the worker's compensation carrier and National should be deducted from the $50,000.00 underinsurance policy limit. Allstate also alleged that payment of underinsurance benefits would violate the policy provision which prohibits payments that directly or indirectly benefit a worker's compensation carrier. Allstate further alleged that it was relieved of its obligation to pay underinsurance benefits by the Suttons' failure to give timely notice of their claim. Allstate did not dispute the Suttons' claim that their damages exceeded the amounts paid by worker's compensation and National.

The trial court granted summary judgment in Allstate's favor. In doing so, it found, as a matter of law, that the policy limits should be reduced by the amounts previously paid. It also found that payment by Allstate would indirectly benefit the worker's compensation carrier. It further found that the Suttons failed to timely notify Allstate of their claim, and that the presumption of prejudice arising from lack of timely notice was not rebutted. The Suttons now appeal.

### STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard as the trial court. *American Family Mutual Insurance Co. v. Dye*, 634 N.E.2d 844, 846 (Ind.Ct.App.1994), *reh'g. denied, trans. denied.* Summary judgment is appropriate when the evidentiary matter designated to the trial court shows no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Fawley v. Martin's Supermarkets Inc.*, 618 N.E.2d 10, 12 (Ind.Ct.App.1993), *trans. denied.* When the parties do not dispute the facts material to the claim, our task is to determine whether the trial court correctly applied the law to the facts. *State ex rel. Ind. State Bd. of Dental Examiners v. Judd*, 554 N.E.2d 829, 830 (Ind.Ct.App.1990).

### DISCUSSION AND DECISION

### I. REDUCTION FROM POLICY LIMITS OR TOTAL DAMAGES

The Suttons contend that the trial court erred in finding as a matter of law that

the underinsurance policy limits should be reduced by the amount of the payments from the worker's compensation carrier and National. The Suttons argue that the insurance policy is ambiguous and should be strictly interpreted against Allstate.

■ The interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly suited for summary judgment. *Transcontinental Technical Services, Inc. v. Allen,* 642 N.E.2d 981, 983 (Ind.Ct.App.1994), *trans. denied.* Where there is an ambiguity, policies are to be construed strictly against the insurer.[1] *American States Insurance Co. v. Kiger,* 662 N.E.2d 945, 947 (Ind.1996), *reh'g. denied.* This is particularly true where a policy excludes or limits coverage. *Delaplane v. Francis,* 636 N.E.2d 169, 171 (Ind.Ct.App.1994), *trans. denied.* Strict construction means that the insurer is bound by the plain and ordinary meaning of the words viewed from the standpoint of the insured. *Tate v. Secura Insurance,* 587 N.E.2d 665, 668 (Ind.1992). Strict construction against the insurer is "driven by the fact that the insurer drafts the policy and foists its terms upon the customer." *Kiger,* 662 N.E.2d at 947. "The insurance companies write the policies; we buy their forms or we do not buy insurance." *Id.* (quoting *American Economy Insurance Co. v. Liggett,* 426 N.E.2d 136, 142 (Ind.Ct.App.1981)).

Indiana courts have held that policies containing ambiguous reduction language should be interpreted to mean that total damages should be reduced by the amounts paid by other sources, while policies containing unambiguous language should be interpreted to mean that policy limits should be reduced by amounts paid by other sources. The onus is upon the insurer to write policies which unambiguously state that reductions are to be made from the policy limits.

In a number of cases, this court has found reduction language to be unambiguous. In

*Medley v. American Economy Insurance Co.,* 654 N.E.2d 313, 316 (Ind.Ct.App.1995), *trans. denied,* we held that reduction language stating that "[t]he limit of liability will be reduced by all sums paid" was unambiguous and should be interpreted to provide for reduction from policy limits. In *Hardiman v. Governmental Interinsurance,* 588 N.E.2d 1331, 1333 (Ind.Ct.App.1992), *trans. denied,* we held that language stating that "[a]ny amount payable under this insurance shall be reduced by [other payments]" was unambiguous. Similar language in *Edwards v. Vernon Fire and Casualty Insurance Co.,* 571 N.E.2d 1306, 1307–8 (Ind.Ct.App.1991), stating that "[a]ny amounts otherwise payable for damages under this coverage shall be reduced by all sums," was unambiguous. Similarly, our supreme court has held that language providing for reduction of "any amount payable under this insurance" and "any amounts otherwise payable for damages under this coverage" was unambiguous. *American Economy Insurance Co. v. Motorists Mutual,* 605 N.E.2d 162, 164 (Ind.1992).[2]

In other cases, our courts have found reduction language to be ambiguous. In *Tate,* our supreme court interpreted language which stated, under the heading of "Reductions in the amounts payable," that "[a]mounts payable will be reduced by: 1. Amounts paid because of the bodily injury by, or on behalf of persons or organizations who may be legally responsible." 587 N.E.2d at 667–68. The court held that the language was ambiguous as "amounts payable" could refer to either total damages or policy limits. *Id.* at 668. In *Ansert v. Indiana Farmers Mutual Insurance Co.,* 659 N.E.2d 614, 621 (Ind.Ct.App.1995), *reh'g. denied,* this court relied on *Tate* in holding that language providing that "any amount payable shall be reduced by [other payments]" was ambiguous and should be interpreted to require reduction from total damages. In *De-*

---

**1.** An insurance policy is ambiguous "when it is susceptible to more than one interpretation and reasonably intelligent men would honestly differ as to its meaning." *Transcontinental,* 642 N.E.2d at 983.

**2.** However, a policy stating that "[a]ny amount payable for damages under this coverage" was held to be ambiguous when the previous paragraph referred to reduction of the "Limit of Insurance." *See Transcontinental,* 642 N.E.2d at 983–84.

*laplane,* we also relied on *Tate* to find similar language ambiguous.

In the present case, the policy language states that "subject to the above limits of liability, damages payable will be reduced by [other payments]." (R. 111–12). The "damages payable" language is not defined in the policy, and is ambiguous in the same manner as the "amounts payable" and "any amount payable" language found in *Tate, Ansert,* and *Delaplane.* Because the language is ambiguous, we will strictly interpret it against Allstate and in favor of the Suttons. Accordingly, the policy must be interpreted to provide that the total damages incurred by the Suttons, not the policy limits, shall be reduced by the amounts paid by National and the worker's compensation carrier.

Allstate contends that the presence of the "subject to the above limits of liability" language of the policy unambiguously provides that the policy limits are to be reduced. In essence, Allstate is contending that the policy language should be redacted to read that "[s]ubject to the above limits of liability, damages payable will be reduced by [other payments]." However, the language does not so provide. In fact, the language makes a distinction between the phrases "limits of liability" and "damages payable," and can be reasonably interpreted to mean that the $50,000.00 limit of liability applies even if total damages after reduction exceed that amount. The language is ambiguous and must be interpreted in the Suttons' favor.

## II. BENEFIT TO THE WORKER'S COMPENSATION CARRIER

■ The policy between Allstate and the Suttons excluded coverage for damages if the payment would directly or indirectly benefit any worker's compensation carrier. In granting summary judgment, the trial court concluded that payment of the underinsurance limits would indirectly benefit the worker's compensation carrier. (R. 145). It based this conclusion on its belief that the worker's compensation carrier was able to extract a promise of dismissal of additional

claims because the Suttons anticipated payment of underinsurance benefits by Allstate.

The designated evidence shows that a settlement was reached by Littlepage, National, the City of Evansville, Allstate, and the Suttons. The agreement included a provision stating that the City would settle its worker's compensation lien for the sum of $4,000.00, to be paid from the $25,000 received from Littlepage and National, in exchange for Sutton's promise to dismiss his claim against the City and to refrain from bringing any future claims based upon his accident with Littlepage. (S.R.5–11). There is no evidence to support the trial court's conclusion that the settlement was reached in anticipation of future recovery from underinsurance proceeds paid by Allstate. The settlement itself establishes that the basis for dismissal of claims by Sutton was the City's release of its worker's compensation claims. Thus, the trial court erred in concluding that an indirect benefit based on the hope of future recovery existed.

## III. TIMELY NOTICE OF CLAIM

■ The Suttons allege that the trial court erred in determining that they failed to timely notify Allstate of their claim. They further allege that Allstate was not prejudiced by the two year delay in notice.

Allstate contended below, and the trial court specifically found, that the Suttons failed to overcome the presumption that the two year delay in notice was prejudicial. In its memorandum below and in its brief on appeal, Allstate cited *Miller v. Dilts,* 463 N.E.2d 257 (Ind.1984) and *Koenig v. Bedell,* 601 N.E.2d 453 (Ind.Ct.App.1992) as authority for the conclusion that it was prejudiced by the Suttons' delay in giving notice.

In *Miller,* our supreme court examined the issue of whether insurers were required to show that they were prejudiced by delays in notification of claims. In making its decision, the supreme court first noted that a representative insurance policy[3] required the insured to give "prompt notice" of a claim. 463

---

**3.** In *Miller,* the trial court joined three different cases for consideration. Each case involved the

issue of timely notification.

N.E.2d at 260. The court defined "prompt notice" by referring to *Employers et., Corp. v. Light, etc., Co.,* 28 Ind.App. 437, 63 N.E. 54 (1902), which defined "immediate notice" as "notice within a reasonable time, considering the purpose for which the notice is given and the circumstances of the case." 463 N.E.2d at 263. It then stated that a determination of the reasonableness of notice is "a question of law for the court to determine when facts are not in dispute," and a determination of unreasonableness absolved the insurer of its obligation to pay the insured's claim. *Id.* (quoting *London Guarantee and Accident Co. v. Siwy,* 35 Ind.App. 340, 345–46, 66 N.E. 481, 482–83 (1903)). The court concluded that:

> The notice requirement is "material, and of the essence of the contract." *London Guarantee, supra,* 35 Ind.App. at 345, 66 N.E. at 482. The requirement of prompt notice gives the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the accident or loss. This adequate investigation is often frustrated by the delayed notice. Prejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an unreasonable delay in notifying the company about the accident or the filing of a lawsuit. This is not in conflict with the public policy that the court should seek to protect the innocent third parties from attempts by insurance companies to deny liability for some insignificant failure to notify. The injured party can establish some evidence that prejudice did not occur in the particular situation. Once such evidence is introduced, the question becomes one for the trier of fact to determine whether any prejudice actually existed. The insurance carrier in turn can present evidence in support of its claim of prejudice. Thus, both parties are able to put forth their respective positions in the legal arena.

*Id.* at 265–66.

In *Koenig,* a panel of this court examined the issue of whether an insurer was preju-

diced by an insured's seven and a half year delay in notifying the insurer about an uninsured coverage claim. The majority held that the delay in notification was unreasonable as a matter of law. 601 N.E.2d at 456. The majority further held that the insured failed to rebut the presumption of prejudice resulting from unreasonable delay because she did not demonstrate "that the scene of the accident had not changed, that the witnesses were still available, or that their memories of the incident had not faded over the passage of time to the extent that [the insurer] could still meaningfully investigate the claim." *Id.* The dissenting judge agreed that the delay was unreasonable; however, he did not agree that the insured failed to rebut the presumption of prejudice since the designated evidence seemed to indicate that the fault of the uninsured motorist was not in dispute. *Id.* at 456–57.[4]

■ In the present case, the policy between Allstate and the Suttons required the Suttons to give a detailed written proof of claim. The policy also required that proof of claim be made "[a]s soon as possible." (R. 113). The language of the policy is similar to the language of the policies in *Miller* and *Koenig,* and should be interpreted to require notification within a reasonable time after the accident or loss.

Allstate's motion for summary judgment and the Suttons' response established that Allstate was involved in the negotiations with all the parties, and approved the payment of the liability limits of the policy between Littlepage and National. Thus, it is clear that Littlepage's fault was not in question and that Allstate was not prejudiced by any negotiations between the Suttons and Littlepage or National. It is further clear that the payment of worker's compensation benefits, which was governed by statute, did not prejudice Allstate. The facts are undisputed and are sufficient to rebut the presumption that Allstate was prejudiced by the two year delay in notification. The trial court erred in finding otherwise.

---

4. Both the majority and the dissent assumed that the policy, which was not in evidence, contained a standard provision requiring notice of a claim within a reasonable time after an accident or injury.

## CONCLUSION

The trial court erred in granting summary judgment in favor of Allstate. The trial court's grant of summary judgment is reversed, and the case is remanded to the trial court for further proceedings.

Reversed and remanded.

DARDEN and ROBERTSON, JJ., concur.