**William L. BOSECKER and Diane Bosecker, Individually, Appellants–Plaintiffs,**

v.

**WESTFIELD INSURANCE COMPANY and Sam T. Heston & Sons, Inc., d/b/a Heston Insurance Agency, Appellees–Defendants.**

No. 82A04–9711–CV–500.

Court of Appeals of Indiana.

Sept. 24, 1998.

---

Donald R. Wright, Wright, Evans and Daly, Evansville, for Appellants–Plaintiffs.

Jeffrey W. Henning, James D. Johnson, Mattingly, Rudolph, Fine & Porter, Evansville, R. Steven Krohn, Krohn and D'Amour, Evansville, for Appellees–Defendants.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiffs–Appellants William L. Bosecker and Diane Bosecker (referred to collectively below as "Bosecker") appeal the trial court's grant of summary judgment in favor of Defendants–Appellees Westfield Insurance Company ("Westfield") and Sam T. Heston & Sons, Inc., d/b/a Heston Insurance Agency ("Heston").

We affirm.

### ISSUE

Bosecker raises a single issue for our review, which we restate as: whether the trial court erred in determining as a matter of law that Bosecker's property loss was not covered by his builder's risk policy with Westfield.

### FACTS AND PROCEDURAL HISTORY

Bosecker owned an apartment building and an additional structure in Evansville which he sold to Jason Bartley pursuant to a conditional sales contract. On Thursday morning, February 22, 1996, Bartley called Bosecker and told him that he could not make any more payments and that he wanted to release any interest he had in the real estate. Later that day, he delivered the apartment building keys to Bosecker. Bosecker accepted the keys to the vacant building.

Previously, on or about February 12, 1996, Bosecker, d/b/a Bosecker Construction Company, had received certain notices from the City of Evansville, Code Enforcement Division, advising Bosecker that the apartment building was unsafe and further ordering that the building be vacated and repaired. The City advised Bosecker that failure to comply with the notice within sixty days would result in the razing of the building and the imposition of fines under Indiana's Unsafe Building Law (Ind.Code 36–7–9–1 *et seq.*).

On February 22, 1996, Diane Bosecker called Heston, an independent agency. She spoke with Diana Terrell, a Heston employee, and informed her that the building needed to be insured. Terrell informed Diane that more information was needed and Diane responded that William would call with additional information on February 23, 1996. However, Terrell did determine that the building would be verbally bound under an "Apartment Policy." William called Terrell on the afternoon of February 23, 1996, and advised her that Bosecker Construction Company had received the Department of Code Enforcement notices, that the property was uninhabitable, that the property had to be repaired by a stated deadline, and that repairs would promptly commence. Terrell relayed the information to David Abbott, Heston's President, and Terrell and Abbott determined that the property could not be covered by an Apartment Policy because of the extensive repairs required by the Department of Code Enforcement. Pursuant to Heston's direction on the afternoon of February 23, 1996, the property was bound by a Builder's Policy issued by Westfield.

At approximately 2:00 a.m. on February 24, 1996, the apartment building was substantially damaged by fire. Bosecker sought to recover for his losses by filing a property loss notice with Westfield. Westfield issued a letter denying coverage. The letter noted that § A(2)(b) of the policy provided, under the heading "Property Not Covered", that "[e]xisting buildings or structures to which improvements, alterations, repairs or additions are being made" were not covered by the policy. The letter then stated that coverage was denied, presumably because Westfield believed that repairs were being made to the property at the time the fire occurred.

Bosecker filed suit to require Westfield to pay for the loss to his property. Westfield filed a motion for summary judgment, which noted that § A(1)(a) of the policy provided coverage only for "[b]uildings or structures including foundations while in the course of construction, installation, reconstruction, or repair." The motion alleged that Bosecker was not covered for his loss because the evidence established that he had not begun his repairs of the building before the fire occurred. The trial court granted Westfield's motion, and Bosecker now appeals.

## DISCUSSION AND DECISION

 Upon review of the grant or denial of a summary judgment motion, we apply the same legal standard as the trial court. *Erie Insurance Co. v. American Painting Co.*, 678 N.E.2d 844, 845 (Ind.Ct.App.1997). Summary judgment is appropriate only when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). When material facts are not in dispute, we treat the motion as a question of law. *Edrington v. Rush County Bd. of Commissioners*, 648 N.E.2d 397, 398 (Ind.Ct.App.1995).

 The interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly suited for summary judgment. *Sutton v. Littlepage*, 669 N.E.2d 1019, 1021 (Ind.Ct.App.1996), *reh'g denied*. Where there is an ambiguity, a policy is to be strictly construed against the insurer. *Id.* This is particularly true where a policy excludes or limits coverage. *Id.* Strict construction means that the insurer is bound by the plain and ordinary meaning of the words viewed from the standpoint of the insured. *Id.* (*citing Tate v. Secura Insurance*, 587 N.E.2d 665, 668 (Ind.1992)).

 As stated above, the insurance policy between Westfield and Bosecker defines "Covered Property" to include "[b]uildings or structures including foundations *while in the course of* construction, installation, *reconstruction,* or *repair.*" (§ A(1)(a)) (emphasis supplied). Under the heading of "Property Not Covered," the policy states that "Covered Property" does not include "[e]xisting buildings or structures to which improvements, alterations, *repairs* or additions are being made." (§ A(2)(b)) (emphasis supplied). The two subsections appear to both provide and exclude coverage of a building which is being repaired.

Westfield attempts to explain the apparent ambiguity raised by a comparison of the two subsections by referring to the underlying purpose of a builder's risk policy.[1] Westfield states that "if improvements or repairs are being made to an existing building, a builder's risk policy, like the present policy, should provide coverage for the improvements and alterations being made to the existing building, but not for the existing building itself." Brief of Appellant at 10.

We recognize that the underlying purpose of a particular type of policy may be relevant to a determination of the intent of the policy's language. We cannot agree, however, that the purpose of a builder's risk policy is as narrow as Westfield has described it. In fact, one expert has stated that "[a] builder's risk policy ordinarily indemnifies a builder or contractor against the loss of, or damage to, a *building* he is in the process of constructing." 1 Couch on Insurance 3d § 1:53 (1995) (emphasis supplied). The policy clearly provides coverage for a building while in the course of reconstruction or repair. The terms "reconstruction" or "repair" presuppose the existence of a building; one cannot reconstruct or repair a building that never existed. At the same time, the policy also attempts to deny coverage when an existing building is under repair. The policy is clearly ambiguous and should be strictly construed against the insurance company which drafted it.

 Our determination that the insurance policy between Westfield and Bosecker is ambiguous does not automatically lead to the conclusion that the trial court erred in granting summary judgment in favor of Westfield. It leads only to the conclusion that the exclusion language of the policy cannot be used to deny coverage to Bosecker if the existing building on his property was in the course of reconstruction or repair at the time the loss occurred. The facts pertaining to whether the property was in the course of reconstruction or repair are undisputed; thus, there is no material fact in dispute and the question becomes one of law.

The parties agree that Bosecker assumed possession of the property on February 22,

---

1. The ambiguity of the language is illustrated by the conflicting positions that have been taken by Westfield. Initially, Westfield denied coverage because it believed that repairs were being made.

Then, after the evidence led it to the conclusion that repairs were not being made, Westfield justified denial on the basis that the building was not in the course of reconstruction or repair.

1996, acknowledged his legal duty to reconstruct or repair the property, and purchased insurance through the agency of Heston to cover the repairs. However, Westfield cites to Bosecker's deposition statement that he did not remove any fixtures or structures from the premises or place any materials, supplies, tools, or equipment on the property. Thus, Bosecker did not take any action that is usually associated with the actual "course" of reconstruction or repair.

Bosecker cites *Ira S. Bushey and Sons v. American Insurance Co.,* 237 N.Y. 24, 142 N.E. 340 (1923) and *Patton v. Aetna Insurance Co.,* 595 F.Supp. 533 (N.D.Miss.1984) in support of his contention that he was in the course of reconstruction or repair at the time of the fire. In *Bushey,* the plaintiff shipbuilder purchased a builder's risk policy to insure certain vessels that he intended to construct. *Id.* at 341. The plaintiff procured lumber required to build each vessel and piled it separately in the area where the construction was going to occur. *Id.* He also fabricated a portion of the lumber before it was destroyed by a fire. *Id.* The insurer argued that the vessels were not "in the course of completion" within the meaning of the policy "until some of the parts are joined together in a definite manner, and that the mere fabrication of some of the timbers is not construction but preparation for construction." *Id.* The court noted that if the policy's provision was "fairly susceptible of two interpretations, one of which being that contended for by the insured, it should be most strongly construed against the insurer." *Id.* The court held that when the work of preparation had begun, "in a fair sense" the construction of the vessels had begun. *Id.*

In *Patton,* the plaintiff purchased a vacant house that he intended to renovate into a convenience store. 595 F.Supp. at 534. He purchased builder's risk insurance and then proceeded to unhook the plumbing and gas lines from the house and remove the furnace and lattice work. *Id.* The house was destroyed by fire before any other work was done. *Id.* The court noted that the builder's risk policy protected against certain types of damages occurring to the building "while in the course of construction." *Id.* at 535. The

insurer argued that the plaintiff's actions were merely preparatory and were not done in the course of construction. *Id.* The court determined that the policy was ambiguous and that it should be reasonably construed in favor of the insured. *Id.* It further determined that plaintiff intended to renovate the house and that renovation necessarily entails both additions to and removals from an existing structure. *Id.* It then held that because the parties understood that the plaintiff intended to renovate the house, it was reasonable to interpret " 'construction' as encompassing alterations of any type, whether additions or removals." *Id.*

■ The consistent factor in the two preceding cases is that the insured took some action toward his intended goal. In the present case, Bosecker took no action other than to purchase the insurance. We find that the cases cited by Bosecker are inapposite. We further find that the policy language protecting the building while it was "in the course of reconstruction or repair" cannot be fairly construed to provide protection when the plaintiff has only stated an intent to begin reconstruction or repair at some time in the future.

■ Bosecker notes that the "Amended Common Policy Declarations" page states that coverage of the apartment building was added on February 22, 1996. (R. 51). He further notes that the "General Conditions" page of his policy provides that Westfield would "cover 'loss' commencing during the policy period shown in the Declarations." (R. 45). Bosecker contends that these provisions provide coverage irrespective of whether he had commenced reconstruction or repair of the apartment building.

We cannot agree with Bosecker's reading of these policy provisions. Both the "Amended Common Policy Declarations" page and the "General Conditions" page provide that coverage is limited by other provisions. The pertinent limiting provision defines "covered property" as that property which is "in the course of construction, installation, reconstruction, or repair." If there is no damage to "covered property" during the period designated on the "Amended Common Policy Declarations" page, then there is no

requirement that Westfield pay anything to Bosecker. Conversely, if there is damage to "covered property" during the designated period, then Westfield is required to pay for the damage. The existence of "covered property" is a condition precedent to Westfield's duty to pay damages. This condition precedent leads to the conclusion that the actual accrual date of Westfield's duty to pay may be different than the date designated in the declarations. *See e.g., Newman v. National Fire Insurance Co.,* 152 Miss. 344, 118 So. 295, 297 (1928) (holding that "[a]lthough a policy, by its terms, is to take effect on a certain date, yet it may be shown that because of failure to comply with some condition precedent, it did not take effect until a subsequent day").

### CONCLUSION

The trial court's grant of summary judgment in favor of Westfield was correct.

Affirmed.

RUCKER, J., concurs.

BAILEY, J., dissents with separate opinion.

BAILEY, Judge, dissenting.

I respectfully dissent. Where there is an ambiguity in an insurance contract, the policy is to be construed strictly against the insurance company. *Stevenson v. Hamilton Mutual Insurance Company,* 672 N.E.2d 467, 471 (Ind.Ct.App.1996), *trans. denied.* Strict construction against the insurer is driven by the fact that the insurer drafts the policy and foists its terms upon the customer. *Id.* The insurance companies write the policies; we buy their forms or we do not buy insurance. *Id.* An insurance contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. *Id.* In construing terms in an insurance policy, we apply the rule of construction which favors coverage of the insured. *Allstate Insurance Company v. Neumann,* 435 N.E.2d 591, 593 (Ind.Ct.App.1982).

Although it is common for a builder's risk policy to provide coverage only for the dura-

tion of a specified project, a builder's risk policy may be written for a fixed period of time. *Hospital Service Dist. v. Delta Gas, Inc.,* 141 So.2d 925, 927 (La.App.1962) (policy covered perils for a term of 1 year beginning and ending on specified dates and whether hospital was complete or incomplete at time of explosion was immaterial); 9 Couch on Insurance 3d § 132:20 (1997); *Annotation: Coverage Under Builder's Risk Insurance,* 97 A.L.R.3d 1270 § 2 at 1274. It is only where the builder's risk policy insures during the 'course of construction,' *"regardless of its date"* that it becomes effective as of the time construction or renovation begins. 7 Couch on Insurance 3d § 102:29 (1997) (emphasis supplied).

The majority's reliance on *Newman v. National Fire Insurance Co.,* 152 Miss. 344, 118 So. 295, 297 (1928), is misplaced. First of all, a 1928 Mississippi case is extremely weak authority to guide Indiana jurisprudence into the twenty-first century. Moreover, the insurance policy under scrutiny in *Newman* provided coverage for:

> fire loss on building material on the ground—'to be used and actually used … on the one-story, frame building (incomplete) with composition roof *while in course of construction* ….'

118 So. at 297 (ellipses and emphasis original). Similarly, in *Metzger v. Aetna Insurance Co.,* 227 N.Y. 411, 125 N.E. 814 (1920), the relevant policy language read as follows:

> It is understood and agreed that this policy covers the property described herein only while the building is in process of erection and completion …

125 N.E. at 815. Thus, the language of the policies involved in *Newman* and *Metzger* more clearly spelled out the intention that coverage be provided only when the construction or renovation project was in process.

By contrast, the insurance policy in the present case defines "Covered Property" to include "[b]uildings or structures including *foundations while in the course of* construction, installation, reconstruction, or repair." (§ A(1)(a)) (emphasis supplied). A strict construction of this clause against the insurance company would produce the interpreta-

tion of the phrase "while in the course of" as modifying the word "foundations" only. Thus, "[b]uildings or structures" are covered without qualification.

Additionally, the following language supports the interpretation that coverage is provided before renovation begins:

Covered Property does not include:

Property while on any premises owned, leased, or controlled by you *unless the property is designated for a specific construction project we cover* . . . .

(§ A(2)(a)) (emphasis supplied). In the present case, there can be no dispute that the property destroyed by fire had been designated for the specific construction project contemplated under the policy.

More importantly, however, the policy expressly reads as follows:

**2. WHEN INSURANCE BEGINS AND ENDS**

We cover from the time the Covered Property is at your risk *starting on* or after *the date this coverage begins,* but we will not insure the property after the following events . . . .

(§ E(2)) (emphasis supplied). Clearly, a strict construction of this language against the insurer leads to the conclusion that coverage begins on the *date* the policy is issued and is not triggered by the occurrence of some external event.

Finally, the purchase of builder's risk insurance itself is affirmative conduct taken in the course of constructing or reconstructing a building. In fact, the prudent builder would want insurance coverage in place before taking other affirmative action. Had Westfield intended that coverage be triggered only upon the delivery of the first board, the driving of the first nail, the obtaining of a building permit, or the occurrence of some other affirmative conduct on the part of the builder, the policy could have provided such with specificity.

When the evidence is undisputed, the appellate court may determine as a matter of law that summary judgment was entered in favor of the wrong party and reverse and remand with instructions that judgment be entered in favor of the other party. *Motor-*

*ists Mutual Insurance Company v. Morris,* 654 N.E.2d 861, 862, 864 (Ind.Ct.App.1995). The Westfield policy under scrutiny in the present case is ambiguous because it is susceptible to more than one reasonable interpretation and reasonably intelligent persons honestly differ as to its meaning. As discussed above, the Westfield policy in question may reasonably be interpreted as providing coverage from the date it was issued. As we must strictly construe the policy against the insurance company in favor of providing indemnification, I would reverse and remand with instructions that summary judgment be entered in favor of Bosecker.