Terry **WILDMAN**, Appellant–Plaintiff,

v.

**NATIONAL FIRE AND MARINE INSURANCE COMPANY,**
Appellee–Defendant.

No. 49A05–9803–CV–168.

Court of Appeals of Indiana.

Dec. 10, 1998.

Mark C. Ladendorf, Indianapolis, for Appellant–Plaintiff.

Thomas E. Mixdorf, Ice Miller Donadio & Ryan, Indianapolis, for Appellee–Defendant.

## OPINION

KIRSCH, Judge.

Terry Wildman appeals the grant of National Fire and Marine Insurance Company's (National) Motion for Judgment on the Pleadings raising the following issue for our review: Whether the trial court erred in determining that National was entitled to set-off, under its underinsured motorist policy, the entire amount of worker's compensation benefits Wildman received without deduction for the amount of benefits reimbursed to worker's compensation carrier.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

The facts are not disputed. On October 13, 1993, Wildman, while working as an employee of Police Escort Service, sustained injuries in an automobile-motorcycle collision. Wildman received $47,246.50 in worker's compensation benefits. A settlement agreement was reached between Wildman and the third party tort-feasor's insurance company for its policy limits of $100,000. From this

amount, the worker's compensation carrier was paid $31,497.67 in satisfaction of its lien.[1]

National provided uninsured/underinsured motorist liability coverage to Police Escort Service with policy limits of $300,000. Wildman filed an underinsured motorist claim against National asserting that his damages were greater than the $100,000 settlement he had received from the tortfeasor's insurer. An arbitrator found that Wildman had sustained damages of $205,000 and entered an award in such amount "subject to set-offs as provided for in [the policy]." *Record* at 11. After arbitration, Wildman filed a complaint for declaratory relief to enforce the arbitration award. National responded by filing a counterclaim, asserting that it was entitled to set-off all of the worker's compensation benefits Wildman received, $47,246.50, rather than the net amount Wildman retained after reimbursement to the worker's compensation carrier. National calculated its liability at $57,753.50 ($205,000.00 less $100,000 underlying coverage, less $47,246.50 worker's compensation benefits) and paid this amount. Wildman filed a reply, requesting that the trial court determine that National was entitled to set-off only the net amount of the worker's compensation benefits he retained after repayment to the carrier, $15,748.83, and to find that National owed him $89,251.17.

Wildman filed a motion for summary judgment arguing that the worker's compensation set-off provision in National's underinsured motorist policy was ambiguous and void as against public policy and that National was entitled to set-off only those worker's compensation benefits Wildman actually retained, not the amount of benefits he received and then repaid to the worker's compensation carrier pursuant to IC 22–3–2–13.

National filed a motion for judgment on the pleadings claiming that the set-off provision in the policy was clear and unambiguous and entitled it to set-off all amounts of worker's compensation benefits paid to Wildman ($47,246.50) instead of the amount retained after repayment to the worker's compensation carrier ($15,748.83). The trial court agreed and granted National's Motion for Judgment on the Pleadings. Wildman appeals.

## DISCUSSION AND DECISION

Wildman argues that National should not be entitled to set-off the total amount of worker's compensation benefits he received, but only that remaining after repayment to the worker's compensation carrier, pursuant to IC 22–3–2–13. He challenges the set-off provision on multiple theories: first, the set-off provision is ambiguous; second, that it is void for being against public policy; third, the set-off provision is in derogation of a statute and, therefore, void; and last, the intent of the statute is inapplicable in situations where the amount of underinsured motorist coverage procured is larger than that statutorily prescribed.

### I. Standard of Review

■■■ A judgment on the pleadings pursuant to Indiana Trial Rule 12(C) is proper only when there are no genuine issues of material fact and when the facts shown by the pleadings clearly entitle the moving party to judgment. *Wagle v. Henry,* 679 N.E.2d 1002, 1004 (Ind.Ct.App.1997). A motion for judgment on the pleadings should be granted only when it is clear from the pleadings that the non-moving party cannot in any way succeed under the facts and allegations therein. *Noblesville Redevelopment Comm'n v. Noblesville Assocs. Ltd. Partnership,* 674 N.E.2d 558, 562 (Ind.1996). In reviewing the grant of a Rule 12(C) motion, we accept as true the well-pleaded material facts alleged in the pleadings, and our review is confined to information included in the pleadings. *Id.*

■■■ Insurance contracts are subject to the same rules of construction as are other contracts; construction of a written contract is a question of law. *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.,* 634

---

1. This amount is two-thirds of the worker's compensation carrier's total payment to Wildman ($47,246.50) which is subject to reimbursement from the injured worker pursuant to IC 22–3–2–13. We note that National listed this amount as $32,497.67. *Appellee's Brief* at 1 (citing *Petitioner's Reply to Respondent's Counterclaim for Declaratory Relief, Record* at 30). However, a review of the Record indicates that the number is actually $31,497.67.

N.E.2d 1336, 1337 (Ind.Ct.App.1993). An unambiguous insurance policy must be enforced according to its terms, even those terms that limit an insurer's liability. *Selleck v. Westfield Ins. Co.*, 617 N.E.2d 968, 970 (Ind.Ct.App.1993), *trans. denied.* An insurance contract will be deemed ambiguous only if reasonable people upon reading the contract would differ as to the meaning of its terms. *Meridian Mut. Ins. Co. v. Cox*, 541 N.E.2d 959, 961 (Ind.Ct.App.1989), *trans. denied* (1990). If an insurance contract is found to be ambiguous, it will be strictly construed against the insurer who drafted the contract. *Id.* An ambiguity is not established by the mere existence of a controversy or by the parties' differing interpretations of the contract terms. *Id.*

## II. Ambiguity of the Policy Language[2]

■ IC 22–3–2–13 sets forth the statutory subrogation rights of employers and compensation carriers. It states, in part:

"Whenever an injury ... for which compensation is payable under .... this article shall have been sustained under circumstances creating in some other person than the employer and not in the same employ a legal liability to pay damages in respect thereto, the injured employee, ... may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation.... In that case, however, if the action against the other person is brought by the injured employee ... and judgment is obtained and paid, and accepted or settlement is made with the other person, either with or without suit, then from the amount received by the employee or dependents there shall be paid to the employer or the employer's compensation insurance carrier, subject to its paying its pro-rata share of reasonable and necessary costs and expenses of asserting the third party claim, the amount of compensation paid to the employee or dependents, plus the medical, surgical, hospital and nurses' services and supplies and burial expenses paid by the employer or the employer's compensation carrier....

. . . .

The employer or the employer's compensation insurance carrier shall pay it pro rata share of all costs and reasonably necessary expenses in connection with asserting the third party claim, action or suit, including but not limited to cost of depositions and witness fees, and to the attorney at law selected by the employee or his dependents, ... a fee of thirty-three and one-third per cent (33 1/3 %), if collected with suit, of the amount of benefits after deduction of costs and reasonably necessary expenses in connection with the third party claim action or suit."

IC 22–3–2–13.

■ The challenged language in National's policy is: "Any amount payable under this coverage shall be reduced by all sums paid or payable under any worker's compensation disability benefits or similar law." *Record* at 23, 27, 30. Although a number of Indiana cases have considered reduction language similar to that used by

2. At oral argument, Wildman raised the ambiguity issue and cited, for the first time, to this court the following cases: *Sutton v. Littlepage*, 669 N.E.2d 1019 (Ind.Ct.App.1996); *Ansert v. Indiana Farmers Mut. Ins. Co.*, 659 N.E.2d 614 (Ind.Ct.App.1995), *trans. dismissed* (1996); and *Transcontinental Technical Servs. Inc. v. Allen*, 642 N.E.2d 981 (Ind.Ct.App.1994), *trans. denied* (1995). National argues that the ambiguity of the policy language has been waived by Wildman because, although he raised the issue at the trial court, it was not addressed in his appellate brief. Wildman's counsel, at oral argument, acknowledged that these cases had not been addressed prior to oral argument and subsequently filed with this court a submission of additional authorities. The issue of ambiguity is implicit in any controversy over the interpretation of an insurance contract, because absent ambiguity courts could not engage in interpretative review. We view the ambiguity issue as a threshold issue. At the heart of the waiver issue lies notice to the opposing party. National addressed the issue in its brief and at oral argument. Therefore, we conclude that National had sufficient notice and opportunity to defend against Wildman's ambiguity argument, and we exercise our authority to review this issue on its merits. *See Hardiman v. Governmental Interinsurance Exchange*, 588 N.E.2d 1331, 1333 (Ind.Ct.App.1992), *trans. denied.*

National, with no prevailing consensus on its clarity,[3] no authority cited to this court focuses on the policy language we find controlling here. Most of the authorities cited concentrate on whether the "amounts payable" language applies to reduce the insured's total damages or the policy limits. As noted in *Sutton v. Littlepage:*

> "Indiana courts have held that policies containing ambiguous reduction language should be interpreted to mean that total damages should be reduced by the amounts paid by other sources, while policies containing unambiguous language should be interpreted to mean that policy limits should be reduced by amounts paid by other sources."

669 N.E.2d 1019, 1021 (Ind.Ct.App.1996).

Here, we do not focus on that part of the policy provision relating to "[a]ny amount payable under this coverage...." This phrase is unambiguous. Rather, we focus upon the meaning of the reduction clause, "shall be reduced by all sums paid or payable under and worker's compensation disability benefits...."

National does not define "sums paid or payable." Reasonable people reading this language may conclude that this phrase means the amount of worker's compensation benefits originally received by the insured; equally reasonable people may determine that the reduction applies only to those benefits retained after subtraction of the compensation carrier's statutory lien. Because reasonable people may disagree as to whether it includes worker's compensation benefits received subject to a repayment obligation,[4] we

conclude that the reduction clause in National's policy is ambiguous. We resolve this ambiguity by construing the language in favor of the insured, Wildman, and against the insurer, National, and hold that National is entitled only to set-off the worker's compensation benefits received which are not subject to a repayment obligation. *See Cox,* 541 N.E.2d at 961 (ambiguous policy language strictly construed against insurer).

Because the ambiguity issue is dispositive, we do not reach Wildman's other arguments. We believe, however, that our construction of the reduction provision is consistent with public policy concerns. As one commentator has noted:

> "The goal of providing indemnification for the injuries sustained by motor vehicle accident victims-that is, individuals who are injured by the negligent operation of motor vehicles by inadequately insured motorists-would be well served by employing setoffs so they apply to avoid duplication of benefits, rather than to reduce liability for the insurer when the tortfeasor's liability insurance is not adequate to provide full indemnification.
>
> ....
>
> The public interest would be well served by [the following change] in the structure and marketing of underinsured motorist insurance[,] .... the standard coverage terms should be structured so as to conform to the approach ... by which setoffs would be determined on the basis of reducing the insurer's liability only in relation to the amount of damages for which the claimant has been *actually compensated.*"

---

**3.** *See e.g., Medley v. American Economy Ins. Co.,* 654 N.E.2d 313 (Ind.Ct.App.1995), *trans. denied; Hardiman v. Governmental Interinsurance Exchange,* 588 N.E.2d 1331 (Ind.Ct.App.1992), *trans. denied; Edwards v. Vernon Fire and Casualty Ins. Co.,* 571 N.E.2d 1306 (Ind.Ct.App.1991); *American Economy Ins. Co. v. Motorists Mut.,* 605 N.E.2d 162 (Ind.1992); *Ansert v. Indiana Farmers Mut. Ins. Co.,* 659 N.E.2d 614 (Ind.Ct.App.1995), *trans. dismissed* (1996); *Sutton v. Littlepage,* 669 N.E.2d 1019 (Ind.Ct.App.1996); *Transcontinental Technical Servs. Inc. v. Allen,* 642 N.E.2d 981 (Ind.Ct.App.1994), *trans. denied*

(1995); and *Tate v. Secura Ins.,* 587 N.E.2d 665 (Ind.1992).

**4.** Perhaps no better support for the conclusion that reasonable people may disagree as to the meaning of "sums paid or payable" can be found than National's contention at oral argument that if Wildman had been mistakenly overpaid worker's compensation benefits, National would be permitted to reduce its liability by the amount of such mistakenly paid benefits notwithstanding Wildman's obligation to repay the worker's compensation carrier. We disagree.

3 ALAN I. WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE, § 41.7, at 304–05 (2d ed.1995) (emphasis added).

Reversed and remanded.

STATON and ROBB, JJ., concur.