# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34404

TINA M. CHERRY, )
)
    Plaintiff-Respondent, ) Rexburg, September 2008 Term
)
v. ) 2009 Opinion No. 40
)
COREGIS INSURANCE COMPANY, an ) Filed: March 13, 2009
Illinois insurance company, doing business in )
Idaho under Certificate of Authority No. ) Stephen Kenyon, Clerk
PC602, )
)
    Defendant-Appellant. )

Appeal from the District Court of the Seventh Judicial District of the State of
Idaho, Bingham County. Honorable Jon J. Shindurling, District Judge.

The district court's order on the motion to alter and amend is <u>vacated</u>. The district
court's first order on summary judgment is <u>affirmed</u>.

Anderson Julian & Hull, Boise, for appellant. Brian Julian argued.

Goicoechea Law Offices, Pocatello, for respondent. Albert Matsuura argued.

_____

HORTON, Justice

This appeal involves the interpretation of offset clauses contained in an underinsured
motorist insurance (UIM) policy and the interrelationship of that policy and Idaho's worker's
compensation laws. The district court granted summary judgment in favor of Respondent Tina
Cherry (Cherry), holding that Appellant Coregis Insurance Company (Coregis) was not entitled
to offset funds Cherry received from Farmers Insurance Company (Farmers) on behalf of a third-
party tortfeasor because Cherry was required to pay those funds to the Idaho State Insurance
Fund (the Fund) in order to satisfy the Fund's statutory subrogation interest. Coregis timely
appealed to this Court.

Although we disagree with the district court's analysis and conclude that Coregis is
entitled to offset the entire sum paid to Cherry by Farmers, we conclude that Coregis is entitled
to an offset only for the net sum paid by the Fund to Cherry as worker's compensation benefits.
Accordingly, we affirm in part.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Cherry was injured in an automobile accident during the course and scope of her employment as a bus driver with the Snake River School District (the School District). The School District carried a policy through Coregis which provided UIM coverage with a policy limit of $250,000. The parties stipulated that Cherry incurred damages of at least $250,000. Coregis' policy contains a "Limit of Insurance" provision that provides:

### D.  LIMIT OF INSURANCE

> 1.  Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the LIMIT OF INSURANCE for UNINSURED MOTORISTS COVERAGE[1] shown in the Declarations.
>
> 2.  Any amount payable under this coverage shall be reduced by:
>
>> a.  All sums paid or payable under any workers' compensation, disability benefits or similar law, and
>>
>> b.  All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's LIABILITY COVERAGE.

(Emphasis original.)

Following the accident, Cherry received $102,361.01 from the Fund on the condition, as provided in I.C. § 72-223(3), that she repay any money she might receive for the accident from a third-party tortfeasor. Cherry recovered the policy limits sum of $100,000 from the third-party tortfeasor's insurance company, Farmers, and, after deducting her attorney fees and costs from that amount in accordance with I.C. § 72-223(4), Cherry repaid the Fund with the remaining $66,281.38.

---

[1]  Although this provision appears to relate to UM coverage, rather than UIM coverage, it is undisputed that Coregis' policy provides UIM coverage to Cherry, despite the fact that the third-party motorist was insured. Presumably this is because section F(3) of the policy provides the following definition:

> 3.  "Uninsured motor vehicle" means a land motor vehicle or trailer…
>
>> (b)  That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged but that sum is less than the Limit of Insurance of this coverage…

Cherry then sued Coregis to recover under the UIM policy. After the action was filed, Coregis applied its interpretation of the setoff provisions set forth above, deducting $102,361.01 for worker's compensation benefits (relying on section D(2)(a)) and $100,000 for the sum recovered from Farmers (relying on section D(2)(b)). Based upon the foregoing figures, Coregis paid Cherry $47,638.99. Coregis then moved the district court for summary judgment, arguing that Cherry was not entitled to any further payment under the terms of the UIM policy. The district court disagreed and granted summary judgment in favor of Cherry for $66,281.38. Cherry moved to alter and amend the order granting summary judgment, arguing that Coregis was not entitled to offset any portion of the $100,000 received from Farmers because Cherry was never actually compensated by that money. The district court agreed and awarded Cherry $100,000, with interest accruing from the date of the first order granting summary judgment. Coregis filed a timely notice of appeal.

## II. STANDARD OF REVIEW

When this Court reviews the district court's ruling on a motion for summary judgment, it employs the same standard properly employed by the district court when originally ruling on the motion. *Farmers Ins. Co. of Idaho v. Talbot*, 133 Idaho 428, 431, 987 P.2d 1043, 1046 (1999). Summary judgment is proper when there is no genuine issue of material fact and the only remaining questions are questions of law. *Harwood v. Talbert,* 136 Idaho 672, 677, 39 P.3d 612, 617 (2001); I.R.C.P. 56.

The question of whether an insurance policy is ambiguous is a question of law over which this Court exercises free review. To determine whether a policy is ambiguous, the Court must ask whether the policy is reasonably subject to conflicting interpretations. *Talbot*, 133 Idaho at 432, 987 P.2d at 1047. Any ambiguities should be resolved in favor of the insured, and where language may be given two meanings, one of which permits recovery while the other does not, the policy should be given the construction most favorable to the insured. *Foremost Ins. Co. v. Putzier*, 102 Idaho 138, 142, 627 P.2d 317, 321 (1981) (citations omitted).

## III. ANALYSIS

There are no material facts in dispute. Rather, this appeal presents two issues of law. The primary issue relates to interpretation of the offset provisions in the insurance policy. The second issue is Cherry's entitlement to an award of attorney fees on appeal. These issues will be discussed in turn.

3

**A. Coregis is entitled to an offset only for the net sum of worker's compensation benefits paid to Cherry.**

The amount of the $250,000 policy limit to which Cherry is entitled after Coregis applies the offset provisions depends upon the interpretation of the policy in light of the fact that the worker's compensation benefits received by Cherry were subject to the Fund's statutory subrogation interest. When analyzing Coregis' policy, the district court acknowledged that Farmers "paid [Cherry] the limit of its policy with [its insured tortfeasor] in the amount of $100,000." Despite this statement, the district court granted summary judgment in favor of Cherry and ordered Coregis to pay her an additional $100,000 based upon its conclusion that the funds received by Cherry from Farmers were not "paid" according to the meaning of that word as contained in section D(2)(b). We do not think this is a reasonable interpretation.[2]

The verb "pay," of which the word "paid" is the past participle, is a word of common usage meaning "to give to (a person) what is due." WEBSTER'S NEW WORLD DICTIONARY 1044 (2d College ed. 1976). Farmers has given Cherry $100,000, which it has never recouped. From Farmers' perspective, it has manifestly "paid" $100,000. The district court's conclusion is only possible by an analysis that focuses on whether Cherry ultimately benefited from the payment, not on whether Farmers gave her the money to which she was entitled. In our view, this analysis results in a distortion of the word "paid" beyond recognition. For this reason, we vacate the district court's order entered on Cherry's motion to alter and amend.

In our view, the more appropriate approach is to evaluate whether money has been "paid" or is "payable" by examining the financial impact upon the party responsible for "payment." When considering this matter from the perspective of the Fund, one may reasonably assert that the Fund paid one of two different sums: the gross sum of $102,361.01 or the net sum of $36,079.63 after accounting for its recovery of $66,281.38 from Cherry under the statutory subrogation provision of I.C. § 72-223(3).[3] Thus, the question is presented whether the phrase "[a]ll sums paid or payable" in the D(2)(a) offset provision refers to gross or net sums paid or

---

[2] We recognize that the district court's focus on section D(2)(b) was prompted by its awareness of our decision in *Am. Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 94 P.3d 699 (2004). In *Reichert*, we considered section D(2)(a) and stated: "we found nothing in the offset provision that is ambiguous." 140 Idaho at 399, 94 P.3d at 704. As will be discussed *infra*, our statement in *Reichert* was overly broad, as it did not take into account the situation presented in the instant case wherein the Fund has asserted its statutory subrogation interest in the proceeds recovered from an insured third-party tortfeasor.

[3] Idaho Code § 72-223(3) provides: "If [worker's] compensation has been claimed and awarded, the employer having paid such compensation or having become liable therefor, shall be subrogated to the rights of the employee, to recover against such third party to the extent of the employer's compensation liability."

4

payable as worker's compensation benefits. This Court has not previously addressed this question.

In examining an issue of first impression, it is helpful to look at how other jurisdictions have answered the question. The facts of *Wildman v. Nat'l Fire and Marine Ins. Co.*, 703 N.E.2d 683 (Ind. App. 1998), are analogous to the facts in this case. Wildman was injured in an automobile accident while at work, and his employer carried an uninsured/underinsured motorist liability policy with dual offset provisions similar to the provisions in the Coregis policy. *Id.* at 685. Wildman received funds from a worker's compensation carrier, subject to a statutory lien, which he later repaid with money recovered from the responsible party's insurance company. *Id.* at 684-85. Wildman argued that his employer's insurer, National, should be able to "set-off only those worker's compensation benefits Wildman actually retained, not the amount of benefits he received and then repaid to the worker's compensation carrier" pursuant to the statutory lien. *Id.* at 685.

The setoff provision regarding worker's compensation in the National policy stated: "Any amount payable under this coverage shall be reduced by all sums paid or payable under any worker's compensation disability benefits or similar law." *Id.* at 686. The court focused on the meaning of the phrase "sums paid or payable" in that provision and determined that:

> Reasonable people reading this language may conclude that this phrase means the amount of worker's compensation benefits originally received by the insured; equally reasonable people may determine that the reduction applies only to those benefits retained after subtraction of the compensation carrier's statutory lien. Because reasonable people may disagree as to whether it includes worker's compensation benefits received subject to a repayment obligation, we conclude that the reduction clause in National's policy is ambiguous. We resolve this ambiguity by construing the language in favor of the insured, Wildman, and against the insurer, National, and hold that National is entitled only to set-off the worker's compensation benefits received which are not subject to a repayment obligation.

*Id.* at 687 (citing *Meridian Mut. Ins. Co. v. Cox*, 541 N.E.2d 959, 961 (Ind. App. 1989) (ambiguous policy language strictly construed against insurer)). The offset provision regarding worker's compensation in the Coregis policy is ambiguous for the same reasons outlined by the *Wildman* court, and in Idaho, as in Indiana, all ambiguities in an insurance policy are to be resolved against the insurer. *Foremost Ins.*, 102 Idaho at 142, 627 P.2d at 321. We find the reasoning in *Wildman* to be persuasive and conclude that while Coregis' obligation is reduced by the $100,000 paid by Farmers under section D(2)(b), Coregis' obligation to Cherry is reduced

5

only by the net amount of worker's compensation benefits paid or payable to Cherry under section D(2)(a) – $36,079.63.  Thus, Cherry is entitled to recover from Coregis an amount equal to the amount she paid to the Fund in order to satisfy the Fund's statutory subrogation interest – $66,281.38.

We recognize that this conclusion is facially at odds with our previous holding in *Am. Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 94 P.3d 699 (2004).  In *Reichert*, we examined section D(2)(a) and stated that "we found nothing in the offset provision that is ambiguous."  140 Idaho at 399, 94 P.3d at 704.  However, we conclude that *Reichert* is distinguishable from the instant case both legally and factually.  Reichert was injured by an uninsured motorist while on the job, and his employer carried liability insurance for uninsured motorists through American Foreign Insurance Company (American).  *Id.* at 397, 94 P.3d at 702.  Reichert initiated a worker's compensation claim.  *Id.*  The industrial commission, while processing Reichert's claim, decided that funds Reichert received for worker's compensation would not be subject to the subrogation interest set out in I.C. § 72-223.  *Reichert v. Magic Valley Foods, Inc.*, IC 93-830670, Industrial Commission Order at 2 (November 30, 1998).[4]  Before the worker's compensation claim proceedings were completed, Reichert and American agreed to arbitrate Reichert's uninsured motorist claim, and the arbitrator granted Reichert a compensatory damage award.  *Id.*  Reichert appealed, raising several issues.  140 Idaho at 398, 94 P.3d at 703.

The liability policy held by Reichert's employer contained an offset provision almost identical to section D(2)(a) in Coregis' policy.  *Id.*  Reichert argued that the offset provision was void in its entirety as against public policy because the insurer "knew that all claimants would only receive minimal, if any, coverage because all claimants would also receive worker's compensation benefits."  *Id.* at 399, 94 P.3d at 704.  In other words, Reichert was not arguing the gross versus net distinction that Cherry has argued; rather, he was arguing, in the first instance, that no offset for worker's compensation should be allowed at all.  This Court disagreed.  *Id.* at 400, 94 P.3d at 705.

The dissent urges that Reichert was "in essence" advancing the same argument that Cherry makes now, that "the net money actually retained by the claimant does not reflect the

<hr />

[4]  The Court makes no mention of the statutory subrogation interest in *Reichert*.  The industrial commission, however, ordered that Reichert would not be subject to the statutory lien because it did not consider American to be a "third-party" as contemplated by I.C. § 72-223 and also because it found that the exclusions and limitations in American's policy were valid.  *Reichert v. Magic Valley Foods, Inc.*, IC 93-830670, Industrial Commission Findings of Fact and Conclusions of Law at 4-7 (November 30, 1998).

gross compensation within the insurance plan." We believe that this misses the substance of Reichert's argument. Although Cherry's argument is similar to Reichert's to the extent that each claimant was attempting to maximize recovery under the UIM policy, Reichert argued a much broader proposition than does Cherry. He asserted that the worker's compensation offset provision in section D(2)(a) effectively negated the coverage afforded by the policy and thus, coverage was illusory. Accordingly, Reichert asked this Court to declare that the offset provision was void.

Cherry does not argue that the offset provision is void or that coverage is illusory. Rather, her argument focuses upon the effect of the Fund's assertion of its statutory subrogation interest in her recovery from the third-party tortfeasor. The Fund's assertion of its statutory rights has revealed a latent ambiguity in the language of the offset provision that this Court had no cause to consider under the facts of *Reichert*: Does the phrase "sums paid or payable" refer to the gross sum of worker's compensation or to the net sum of worker's compensation after the Fund's subrogation interest is satisfied?

The dissent further argues that the Court's definition of "payable" in *Reichert* answers the question of whether "sums paid or payable" refers to gross or net sums. The dissent contends there "is no other purpose to use the term 'or payable' . . . except to cover funds to which a recipient is entitled, or funds which the recipient received but did not retain." The difficulty with reliance on our holding in *Reichert* is that this Court was addressing a different question than is presented in this case. Reichert argued that the term "payable" in the offset provision limited the offset to worker's compensation benefits already paid, as opposed to those that might be paid in the future. *Id.* at 402, 94 P.3d at 707. The Court held that "applying the common understanding of the word 'payable,' not only should the benefits that have already been paid to Reichert be deducted from the compensatory damages amount, but also any future benefits which the Industrial Commission awards." *Id.* Applying the definition of "payable" in *Reichert,* we are still confronted with the question whether the use of the phrase "sums paid or payable" in the offset provision refers to gross or net sums paid (in the past) or gross or net sums payable (presently or in the future). In short, this case presents a markedly different situation than was addressed in *Reichert*. We conclude that our decision in *Reichert* is not inconsistent with our resolution of the ambiguity in favor of the insured in the instant case. Accordingly, albeit for

7

different reasons, we affirm the district court's initial decision on summary judgment in which Cherry was awarded $66,281.38.

### B. Cherry is entitled to an award of attorney fees on appeal.

The district court awarded Cherry attorney fees, costs and prejudgment interest pursuant to I.C. §§ 41-1839 and § 28-22-104.[5] Coregis has not challenged that award on appeal, although in view of our determination that the order on Cherry's motion to alter and amend must be vacated, the district court ought to reconsider aspects of that order on remand. Cherry now seeks an award of attorney fees on appeal.

Cherry's claim for attorney fees is based upon I.C. § 41-1839. Coregis argues that an award attorney fees ought not be awarded on appeal under I.C. § 41-1839 in cases wherein the appeal is not frivolous and was pursued in good faith. There are two provisions of I.C. § 41-1839 which may potentially apply to this appeal: subsections (1) and (4).[6] Although we have yet to award attorney fees under the latter provision, we have indicated that attorney fees may properly be awarded under I.C. § 41-1839(4) when the appeal "was brought, pursued or defended frivolously, unreasonably or without foundation." *Trinity Universal Ins. Co. v. Kirsling,* 139 Idaho 89, 94, 73 P.3d 102, 107 (2003). As we have vacated the district court's award of $100,000, the issues presented by Coregis in this appeal are manifestly not frivolous. Thus, there is no basis for an award of attorney fees under I.C. § 41-1839(4).

---

[5]     The trial court's order awarding attorney fees, costs and prejudgment interest is not before this Court in the record on appeal. However, each of the parties has discussed the award and its statutory bases.

[6]     Idaho Code § 41-1839 provides, in pertinent part, as follows:

> (1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.
>
> . . .
>
> (4)   Notwithstanding any other provision of statute to the contrary, this section and section 12-123, Idaho Code, shall provide the exclusive remedy for the award of statutory attorney's fees in all actions between insureds and insurers involving disputes arising under policies of insurance. Provided, attorney's fees may be awarded by the court when it finds, from the facts presented to it that a case was brought, pursued or defended frivolously, unreasonably or without foundation. Section 12-120, Idaho Code, shall not apply to any actions between insureds and insurers involving disputes arising under any policy of insurance.

We have determined that Cherry is justly due $66,281.38 under the terms of the policy and that sum has not been paid. Coregis does not dispute that Cherry has provided the proof of loss required by I.C. § 41-1839(1). We can see no principled basis for engrafting the language of I.C. § 41-1839(4) to this provision. Accordingly, applying the plain language of the statute, we conclude that Cherry is entitled to an award of attorney fees incurred on appeal.

## IV. CONCLUSION

We hold that Coregis is entitled to an offset for the $100,000 paid by Farmers under section D(2)(b) of Coregis' policy and an offset of $36,079.63, representing the net sum of worker's compensation benefits paid to Cherry, under section D(2)(a) of Coregis' policy. The district court's order on Cherry's motion to alter and amend is vacated. The district court's original order on summary judgment is affirmed. Attorney fees and costs incurred on appeal are awarded to Cherry.

Chief Justice EISMANN and Justices BURDICK and J. JONES **CONCUR**.

W. JONES, J., dissenting:

I respectfully dissent as follows:

The majority opinion runs contrary to precedence established by this Court and attempts to interpret clearly unambiguous language in an insurance policy. For those reasons, I respectfully dissent.

**Section D(2)(a) is not ambiguous**.

The policy in this case essentially has two separate setoff provisions; (1) section D(2)(a), which allows for deductions from the policy limits for funds paid or payable by workers' compensation; and (2) section D(2)(b), which allows for deductions for funds paid by a legally responsible party. The majority is technically correct that this issue was properly preserved for appeal. However, it must first be clarified that the district court did not find that the section D(2)(a) setoff provision was ambiguous and only addressed section D(2)(b) in its decision.[7] Section D(2)(a) reads "[a]ny amounts payable under this coverage shall be reduced by: (a) [a]ll sums paid or payable under any workers' compensation[.]" Therefore, within section D(2)(a) there are two sub-issues; (1) whether the funds were paid by the Fund, or (2) whether the funds were payable by the Fund.

---

[7] "The [district court] finds that, . . . [Cherry] has not been paid a sum by a third party [as] contemplated by section D(2)(b) of the addendum because [Cherry] has never been actually compensated by the money from Farmers."

The majority poses the question as one of first impression in Idaho; that is, "whether the phrase '[a]ll sums paid or payable' in the D(2)(a) offset provision refers to gross or net sums paid or payable as worker's compensation benefits." This question is not one of first impression in Idaho because, as noted by the majority, it was previously addressed in *Am. Foreign Ins. Co. v. Reichert*; although, the *Reichert* Court addressed the question of "paid" and "payable" separately. See *Am. Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 399-402, 94 P.3d 699, 704-707 (2004). The majority attempts to distinguish *Reichert* from the present case on the same basis, stating that "Reichert was not arguing the gross versus net distinction that Cherry has argued; rather, he was arguing, in the first instance, that no offset for worker's compensation should be allowed at all." This statement misconstrues the argument posed in *Reichert*. The issue presented to this Court in *Reichert* on appeal asked whether "American's uninsured motorist coverage endorsement paragraph D2(a) ("offset provision") [is] void[.]" *Id.* at 399, 94 P.3d at 704. This Court summarized Reichert's argument that the "offset provision" was void because "American knew that all claimants would only receive minimal, if any, coverage because all claimants would also receive worker's compensation benefits." *Id.* So, while the words "gross versus net" were not specifically used by this Court in *Reichert*, Reichert was in essence posing the same argument as Cherry. That is, the "offset provision" should not be allowed because it reduces the amount of total recovery of every claimant who also receives workers' compensation benefits; or put another way, the net money actually retained by the claimant does not reflect the gross compensation within the insurance plan.

The majority recognizes that the offset provision in *Reichert* is "almost identical to section D(2)(a) in Coregis' policy." The offset provisions are not just "almost identical," they are indistinguishably identical.[8] It seems illogical that the majority would find the identical provision and identical fact pattern in *Reichert* distinguishable from the present case based on the specific language of a party's argument presented. The law of this State should not hinge on the use of a crafty lawyer's verbal gymnastics. The majority's conclusion is expressly contrary to existing Idaho law as stated by this Court no less than five years ago. This Court has previously specifically decided that language identical to section D(2)(a) is not ambiguous, and in

---

[8] Compare the provision in *Reichert*, which reads "[a]ny amount payable under this coverage shall be reduced by all sums paid or payable under any workers' compensation, disability benefits or similar law" with the Coregis policy, which reads "[a]ny amount payable under this coverage shall be reduced by [a]ll sums paid or payable under any workers' compensation, disability benefits or similar law[.]" See *Am. Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 399, 94 P.3d 699, 704 (2004).

accordance with that finding, this Court should reverse the district court's decision. See *Id.* This Court has and should continue to find that provision unambiguous, and therefore, valid. *Id.*

Although the *Reichert* Court did not expressly find that the funds were "paid" it held the offset provision valid and "consistent with the public policy against double recovery for worker's compensation benefits." *Id.* at 400, 94 P.3d at 705. The Court also found no ambiguity in the term "payable."

> As indicated above *the offset provision is unambiguous*. When there is no ambiguity, there is no occasion for construction and coverage must be determined using the plain meaning of the words employed. Payable means that which is to be paid. In further explanation, Black's Law Dictionary provides that an amount may be payable without being due. The term has also been defined as that requiring to be paid, capable of being paid, or due.
> These definitions represent the common understanding of the term payable. In application to this case, applying the common understanding of the term payable, not only should the benefits that have already been paid to Reichert be deducted from the compensatory damages amount, but also any future benefits which the Industrial Commission awards. Obviously the exact benefits that may be paid in the future are unknown.

*Id.* at 402, 94 P.3d at 707 (2004) (internal citations omitted) (emphasis added). The Court in *Reichert* ultimately found that the decision to pursue any further workers' compensation claims rested solely in the hands of the worker. So, although the exact language "net versus gross" was not addressed in *Reichert*, the Court did not fail to address the obvious; that being, that the basis of Reichert's claim in favor of recovery was prevented by the unambiguous language of the terms "paid or payable" within the policy. Although American did not have the right to pursue Reichert's worker's compensation claim this Court determined that "[o]n remand the district court can decide the issue of breach of contract[.]" *Id.* That is, under the terms of the insurance contract, Reichert may be liable for his failure to pursue future worker's compensation and reduce American's liability limits by the amount which would constitute funds "payable."

The majority tries to distinguish *Reichert* further because Reichert's worker's compensation benefits were not subject to a subrogation lien. It appears that a person is to glean this information from a separate order issued by the Industrial Commission. This begs the question of whether the reliability of the decisions of this Court will be distinguished on facts outside of the language of the opinion. I find this "distinguishing" fact unpersuasive because it is not found within the plain language of the opinion and is not binding legal authority. From the

11

plain language of the opinion it is impossible to determine whether Reichert's worker's compensation benefits would be subject to the same statutory lien as Cherry's worker's compensation benefits. However, I.C. § 72-223 was adopted in 1971 and last amended in 2000. The decision in *Reichert* was issued in 2004. *Reichert*, 140 Idaho 394, 94 P.3d 699. It is presumed, but not in the language of the opinion, that Reichert's accident occurred around the time of the 2000 amendments[9] which left the subrogation section, I.C. § 72-223(3), unaffected. Therefore, it cannot be presumed that the Court in *Reichert* was confronted with a different situation than the present case.[10] This Court should not make a determination that Reichert's workers' compensation benefits were not subject to the provisions of I.C. § 72-223(3).

Further, it should be recognized that there is no other purpose to use the term "or payable" in the clause D(2)(a) except to cover funds to which a recipient is entitled, or funds which the recipient received but did not retain. By using the term "payable" Coregis was clearly and unambiguously limiting their coverage only to funds which the injured employee did not receive *or expect to receive* from worker's compensation benefits. If the only provision we were looking at was "paid" that would be one thing, but the entire portion of the limitation reads "paid or payable." Whether Cherry was eventually required to reimburse another entity with those funds is inconsequential. The payments were payable or due pursuant to law, and therefore the setoff by Coregis was valid. The sole purpose of the Coregis policy was to compensate an employee who was injured in the course and scope of employment who had no other means for recovery because of an underinsured motorist. This policy was purchased by the School District to supplement any recovery to which the employee would otherwise be entitled in the instance that recovery from others was not possible, for whatever reason.

The majority and the district court rely heavily on the Indiana case of *Wildman v. National Fire and Marine Ins. Co.*, 703 N.E.2d 683 (Ind. Ct. App. 1998), which is factually similar to the situation at hand. Both cases involve policies with two setoff provisions, one which allows for workers' compensation setoff and one for responsible party setoff. The court in

---

[9] Reichert's complaint stemmed from an arbitration agreement which was entered into in early 2001. *Reichert*, 140 Idaho at 397, 94 P.3d at 702.

[10] It is noted that Reichert discussed an offset provision in relation to an uninsured motorist policy, whereas this case addresses an underinsured motorist policy. Uninsured motorist coverage is generally more stringently evaluated by the courts because Idaho has adopted legislation enforcing the coverage of uninsured motorist coverage. See *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 599-600, 701 P.2d 217, 219-20 (1985) (finding that the Idaho legislature has regulated uninsured motorist coverage, but no public policy exists for the regulation of underinsured motorist coverage.)

12

*Wildman* held that the workers' compensation provision was ambiguous because it does not define sums paid or payable, holding "[r]easonable people reading this language may conclude that this phrase means the amount of worker's compensation benefits originally received by the insured; equally reasonable people may determine that the reduction applies only to those benefits retained after subtraction of the compensation carrier's statutory lien." *Id.* 703 N.E.2d at 687. Although the decision in *Wildman* supports Cherry's contention that section D(2)(a) is ambiguous, it too ignores the term "payable" and that decision is not binding on this Court and runs contrary to precedence already established in *Reichert*.

I find that section D(2)(a) is not ambiguous. This Court held that the offset provision in *Reichert* is "consistent with the public policy against double recovery from worker's compensation benefits and is valid." *Reichert*, 140 Idaho at 400, 94 P.3d at 705. To hold that the funds given by the Fund were not "paid or payable" defies logic and completely contradicts the statutory scheme for worker's compensation. The relevant portions of the statute read "[i]f compensation has been claimed and awarded, the employer having *paid* such compensation or having become liable therefore, shall be subrogated to the rights of the employee, to recover against such third party to the extent of the employer's compensation liability." I.C. § 72-223(3) (emphasis added). According to the express language of I.C. § 72-223(3), the Fund would not have a subrogation lien unless the funds were in fact "paid or payable." See I.C. § 72-223(3). It necessarily follows that in order for the Fund to have a subrogation lien, the funds must have been "paid or payable." Therefore, it contradicts logic to argue that the funds were not "paid or payable" because the funds were subject to a subrogation lien. Cherry "would have this court construe the word 'paid' in the limitation of liability provision as meaning 'paid and retained.' The word 'paid' is used unequivocally and without qualification." *Nickamp v. Allstate Ins. Co.*, 202 N.E.2d 126, 128 (Ill. App. 1964). I find that section D(2)(a) of the policy is not ambiguous. The amount of workers compensation benefits paid were properly deducted from the $250,000 limit of the Coregis policy.

**The district court erred by interpreting the section D(2)(b) setoff provision of the policy and finding that the funds received by Cherry from Farmers were not "paid."**

Although the majority does not address this issue, I find it necessary to the analysis because it was the entire basis of the district court's decision. The district court decision does not address section D(2)(a), but hinges entirely upon section D(2)(b). To follow Cherry's

13

argument that none of Farmers payment which goes to the Fund should be deducted from amounts owed to Cherry by Coregis would result in a windfall or double recovery to Cherry. The workers' compensation laws provide for workers' compensation payments to injured workers only to the extent that the worker is not compensated by third-party tortfeasors. In other words, workers' compensation is available as a matter of right to workers' injured in the course and scope of their employment who have no other right of recovery from third parties. Where, as here, Cherry is entitled to a $100,000 payment from Farmers, she is not entitled to $100,000 of the amount she received from the workers' compensation surety simply because the law does not permit recovery of worker compensation benefits to the extent that a third party has made payment. That result is simply the function of the worker compensation laws and is not in any way attributable to the deduction Coregis claims pursuant to the explicit terms of its insurance policy.

This Court has previously determined that a nearly identical setoff provision to section D(2)(b) does not have ambiguous language.[11] In *Mutual of Enumclaw v. Box*, the insurance company filed for declaratory relief seeking to establish that according to the terms of the policy the insurance company was entitled to reduce the coverage by the amounts the insured received from the third party tortfeasor. *Mutual of Enumclaw v. Box*, 127 Idaho 851, 854, 908 P.2d 153, 156 (1995). The district court and this Court held that an insurance company may reduce the liability of an underinsured motorist policy "dollar for dollar by the amounts recovered from the tortfeasor's insurer" according to the language of the policy. *Id.* (internal citation omitted, citing *Mutual of Enumclaw Ins. Co. v. Key*, 883 P.2d 875, 876 (Or. App. 1994)). It was held that an insurance company "will only pay the amount necessary to bring [the plaintiff's] total recovery to the liability limit . . ." when there is clear and unambiguous language allowing for the setoff. *Id*.

The district court held that Cherry was not "paid" the sums which she received from Farmers because "she never possessed the $100,000 free of lien, and merely acted as a temporary holder" under I.C. § 72-223. The relevant portions of the statute read "[i]f compensation has been claimed and awarded, the employer having *paid* such compensation or having become liable therefore, shall be subrogated to the rights of the employee, to recover against such third

---

[11] "Any amounts otherwise payable for damages under this coverage will be reduced by: (a) All sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible." *Mutual of Enumclaw v. Box*, 127 Idaho 851, 854, 908 P.2d 153, 155 (1995).

14

party to the extent of the employer's compensation liability." I.C. § 72-223(3) (emphasis added). This argument is flawed. Merely because the funds were received subject to a statutory lien does not negate the fact that the sums were "paid." For example, if Cherry had borrowed money from her bank, rather than receiving the money from the Fund, Cherry would still be required to pay those monies to the bank on or before the agreed point in time. The fact that the money was owed to another person at the time the money was received from Farmers does not change the interaction between Farmers and Cherry. Farmers made a payment to Cherry, and Cherry received that payment. What Cherry does or does not do with the money once the payment is made cannot subsequently change the previous transaction between Cherry and Farmers. To find so defies logic. The majority also takes issue with the district court's interpretation of the Farmer's payment classifying the result as a "distortion of the word 'paid' beyond recognition." In other words, even the majority agrees that section D(2)(b) is unambiguous and Farmer's payment was properly deducted from the policy limits. I agree; the deduction is clearly and unambiguously established in the policy. It is difficult to understand how the majority can conclude that monies paid by the Fund and subject to its subrogation lien are not "paid" within the meaning of the policy, but somehow monies paid by Farmers subject to the same subrogation lien are "paid" pursuant to the policy. I cannot reconcile that glaring inconsistency. An insurance company is free to limit its liability as long as such limits do not offend public policy and those limits are clearly and unambiguously established within the four corners of the contractual policy.

Both parties make arguments on public policy grounds. However, it is well established in Idaho that the Idaho legislature has not established a public policy regarding underinsured motorist coverage. *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 600, 701 P.2d 217, 220 (1985). "Idaho statutes do not regulate underinsured motorist coverage. . . . [A] statute governing uninsured motorist coverage does not represent any public policy regarding underinsured motorist coverage. Underinsured and uninsured coverage are not identical in either definition or operation." *Andrae v. Idaho Counties Risk Management Program Underwriters*, 145 Idaho 33, 36, 175 P.3d 195, 198 (2008) (internal quotation omitted, citation omitted). "While such a policy might be desirable . . . public policy should be enunciated by our legislature and not by this Court." *Meckert*, 108 Idaho at 600, 701 P.2d at 220 (internal citation omitted).

For the foregoing reasons I would reverse the district court's grant of summary judgment in favor of Cherry.