W. JONES, J.,
dissenting:
I respectfully dissent as follows:
The majority opinion runs contrary to precedence established by this Court and attempts to interpret clearly unambiguous language in an insurance policy. For those reasons, I respectfully dissent.
Section D(2)(a) is not ambiguous.
The policy in this case essentially has two separate setoff provisions; (1) section D(2)(a), which allows for deductions from the policy limits for funds paid or payable by workers’ compensation; and (2) section D(2)(b), which allows for deductions for funds paid by a legally responsible party. The majority is technically correct that this issue was properly preserved for appeal. However, it must first be clarified that the district court did not find that the section D(2)(a) setoff provision was ambiguous and only addressed section D(2)(b) in its decision.[7] Section D(2)(a) reads “[a]ny amounts payable under this coverage shall be reduced by: (a) [a]ll sums paid or payable under any workers’ compensation[.]” Therefore, within section D(2)(a) there are two sub-issues; (1) whether the funds were paid by the Fund, or (2) whether the funds were payable by the Fund.
The majority poses the question as one of first impression in Idaho; that is, “whether the phrase ‘[a]ll sums paid or payable’ in the D(2)(a) offset provision refers to gross or net sums paid or payable as worker’s compensation benefits.” This question is not one of first impression in Idaho because, as noted by the majority, it was previously addressed in Am. Foreign Ins. Co. v. Reichert; although, the Reichert Court addressed the question of “paid” and “payable” separately. See Am. Foreign Ins. Co. v. Reichert, 140 Idaho 394, 399-402, 94 P.3d 699, 704-707 (2004). The majority attempts to distinguish Reichert from the present ease on the same basis, stating that “Reichert was not arguing the gross versus net distinction that Cherry has argued; rather, he was arguing, in the first instance, that no offset for worker’s compensation should be allowed at all.” This statement misconstrues the argument posed in Reichert. The issue presented to this Court in Reichert on appeal asked whether “American’s uninsured motorist coverage endorsement paragraph D2(a) (“offset provision”) [is] void[.]” Id. at 399, 94 P.3d at *889 704. This Court summarized Reichert’s argument that the “offset provision” was void because “American knew that all claimants would only receive minimal, if any, coverage because all claimants would also receive worker’s compensation benefits.” Id. So, while the words “gross versus net” were not specifically used by this Court in Reichert, Reichert was in essence posing the same argument as Cherry. That is, the “offset provision” should not be allowed because it reduces the amount of total recovery of every claimant who also receives workers’ compensation benefits; or put another way, the net money actually retained by the claimant does not reflect the gross compensation within the insurance plan.'
The majority recognizes that the offset provision in Reichert is “almost identical to section D(2)(a) in Coregis’ policy.” The offset provisions are not just “almost identical,” they are indistinguishably identical.[8] It seems illogical that the majority would find the identical provision and identical fact pattern in Reichert distinguishable from the present case based on the specific language of a party’s argument presented. The law of this State should not hinge on the use of a crafty lawyer’s verbal gymnastics. The majority’s conclusion is expressly contrary to existing Idaho law as stated by this Court no less than five years ago. This Court has previously specifically decided that language identical to section D(2)(a) is not ambiguous, and in accordance with that finding, this Court should reverse the district court’s decision. See Id. This Court has and should continue to find that provision unambiguous, and therefore, valid. Id.
Although the Reichert Court did not expressly find that the funds were “paid” it held the offset provision valid and “consistent with the public policy against double recovery for worker’s compensation benefits.” Id. at 400, 94 P.3d at 705. The Court also found no ambiguity in the term “payable.”
As indicated above the offset provision is unambiguous. When there is no ambiguity, there is no occasion for construction and coverage must be determined using the plain meaning of the words employed. Payable means that which is to be paid. In further explanation, Black’s Law Dictionary provides that an amount may be payable without being due. The term has also been defined as that requiring to be paid, capable of being paid, or due. These definitions represent -the common understanding of the term payable. In application to this ease, applying the common understanding of the term payable, not only should the benefits that have already been paid to Reichert be deducted from the compensatory damages amount, but also any future benefits which the Industrial Commission awards. Obviously the exact benefits that may be paid in the future are unknown.
Id. at 402, 94 P.3d at 707 (2004) (internal citations omitted) (emphasis added). The Court in Reichert ultimately found that the decision to pursue any further workers’ compensation claims rested solely in the hands of the worker. So, although the exact language “net versus gross” was not addressed in Reichert, the Court did not fail to address the obvious; that being, that the basis of Reichert’s claim in favor of recovery was prevented by the unambiguous language of the terms “paid or payable” within the policy. Although American did not have the right to pursue Reichert’s worker’s compensation claim this Court determined that “[o]n remand the district court can decide the issue of breach of contract^]” Id. That is, under the terms of the insurance contract, Reichert may be liable for his failure to pursue future worker’s compensation and reduce American’s liability limits by the amount which would constitute funds “payable.”
The majority tries to distinguish Reichert further because Reichert’s worker’s compensation benefits were not subject to a subroga *890 tion lien. It appears that a person is to glean this information from a separate order issued by the Industrial Commission. This begs the question of whether the reliability of the decisions of this Court will be distinguished on facts outside of the language of the opinion. I find this “distinguishing” fact unpersuasive because it is not found within the plain language of the opinion and is not binding legal authority. From the plain language of the opinion it is impossible to determine whether Reichert’s worker’s compensation benefits would be subject to the same statutory lien as Cherry’s worker’s compensation benefits. However, I.C. § 72-223 was adopted in 1971 and last amended in 2000. The decision in Reichert was issued in 2004. Reichert, 140 Idaho 394, 94 P.3d 699. It is presumed, but not in the language of the opinion, that Reichert’s accident occurred around the time of the 2000 amendments[9] which left the subrogation section, I.C. § 72-223(3), unaffected. Therefore, it cannot be presumed that the Court in Reichert was confronted with a different situation than the present ease.[10] This Court should not make a determination that Reichert’s workers’ compensation benefits were not subject to the provisions of I.C. § 72-223(3).
Further, it should be recognized that there is no other purpose to use the term “or payable” in the clause D(2)(a) except to cover funds to which a recipient is entitled, or funds which the recipient received but did not retain. By using the term “payable” Coregis was clearly and unambiguously limiting their coverage only to funds which the injured employee did not receive or expect to receive from worker’s compensation benefits. If the only provision we were looking at was “paid” that would be one thing, but the entire portion of the limitation reads “paid or payable.” Whether Cherry was eventually required to reimburse another entity with those funds is inconsequential. The payments were payable or due pursuant to law, and therefore the setoff by Coregis was valid. The sole purpose of the Coregis policy was to compensate an employee who was injured in the course and scope of employment who had no other means for recovery because of an underinsured motorist. This policy was purchased by the School District to supplement any recovery to which the employee would otherwise be entitled in the instance that recovery from others was not possible, for whatever reason.
The majority and the district court rely heavily on the Indiana case of Wildman v. National Fire and Marine Ins. Co., 703 N.E.2d 683 (Ind.Ct.App.1998), which is factually similar to the situation at hand. Both cases involve policies with two setoff provisions, one which allows for workers’ compensation setoff and one for responsible party setoff. The court in Wildman held that the workers’ compensation provision was ambiguous because it does not define sums paid or payable, holding “[rjeasonable people reading this language may conclude that this phrase means the amount of worker’s compensation benefits originally received by the insured; equally reasonable people may determine that the reduction applies only to those benefits retained after subtraction of the compensation carrier’s statutory lien.” Id. 703 N.E.2d at 687. Although the decision in Wildman supports Cherry’s contention that section D(2)(a) is ambiguous, it too ignores the term “payable” and that decision is not binding on this Court and runs contrary to precedents already established in Reichert.
I find that section D(2)(a) is not ambiguous. This Court held that the offset provision in Reichert is “consistent with the public policy against double recovery from worker’s compensation benefits and is valid.” Reichert, 140 Idaho at 400, 94 P.3d at 705. To *891 hold that the funds given by the Fund were not “paid or payable” defies logic and completely contradicts the statutory scheme for worker’s compensation. The relevant portions of the statute read “[i]f compensation has been claimed and awarded, the employer having paid such compensation or having become liable therefore, shall be subrogated to the rights of the employee, to recover against such third party to the extent of the employer’s compensation liability.” I.C. § 72-223(3) (emphasis added). According to the express language of I.C. § 72-223(3), the Fund would not have a subrogation lien unless the funds were in fact “paid or payable.” See I.C. § 72-223(3). It necessarily follows that in order for the Fund to have a subrogation lien, the funds must have been “paid or payable.” Therefore, it contradicts logic to argue that the funds were not “paid or payable” because the funds were subject to a subrogation lien. Cherry “would have this court construe the word ‘paid’ in the limitation of liability provision as meaning ‘paid and retained.’ The word ‘paid’ is used unequivocally and without qualification.” Niekamp v. Allstate Ins. Co., 52 Ill.App.2d 364, 202 N.E.2d 126, 128 (1964). I find that section D(2)(a) of the policy is not ambiguous. The amount of worker’s compensation benefits paid were properly deducted from the $250,000 limit of the Coregis policy.
The district court erred by interpreting the section D(2)(b) setoff provision of the policy and finding that the funds received by Cherry from Farmers were not “paid.”
Although the majority does not address this issue, I find it necessary to the analysis because it was the entire basis of the district court’s decision. The district court decision does not address section D(2)(a), but hinges entirely upon section D(2)(b). To follow Cherry’s argument that none of Farmers payment which goes to the Fund should be deducted from amounts owed to Cherry by Coregis would result in a windfall or double recovery to Cherry. The workers’ compensation laws provide for workers’ compensation payments to injured worker’s only to the extent that the worker is not compensated by third-party tortfeasors. In other words, workers’ compensation is available as a matter of right to workers’ injured in the course and scope of their employment who have no other right of recovery from third parties. Where, as here, Cherry is entitled to a $100,000 payment from Farmers, she is not entitled to $100,000 of the amount she received from the workers’ compensation surety simply because the law does not permit recovery of worker compensation benefits to the extent that a third party has made payment. That result is simply the function of the worker compensation laws and is not in any way attributable to the deduction Coregis claims pursuant to the explicit terms of its insurance policy.
This Court has previously determined that a nearly identical setoff provision to section D(2)(b) does not have ambiguous language.[11] In Mutual of Enumclaw v. Box, the insurance company filed for declaratory relief seeking to establish that according to the terms of the policy the insurance company was entitled to reduce the coverage by the amounts the insured received from the third party tortfeasor. Mutual of Enumclaw v. Box, 127 Idaho 851, 854, 908 P.2d 153, 156 (1995). The district court and this Court held that an insurance company may reduce the liability of an underinsured motorist policy “dollar for dollar by the amounts recovered from the tortfeasor’s insurer” according to the language of the policy. Id. (internal citation omitted, citing Mutual of Enumclaw Ins. Co. v. Key, 131 Or.App. 130, 883 P.2d 875, 876 (1994)). It was held that an insurance company “will only pay the amount necessary to bring [the plaintiffs] total recovery to the liability limit ...” when there is clear and unambiguous language allowing for the setoff. Id.
The district court held that Cherry was not “paid” the sums which she received from Farmers because “she never possessed the $100,000 free of lien, and merely acted as a temporary holder” under I.C. § 72-223. The *892 relevant portions of the statute read “[i]f compensation has been claimed and awarded, the employer having paid such compensation or having become liable therefore, shall be subrogated to the rights of the employee, to recover against such third party to the extent of the employer’s compensation liability.” I.C. § 72-223(3) (emphasis added). This argument is flawed. Merely because the funds were received subject to a statutory lien does not negate the fact that the sums were “paid.” For example, if Cherry had borrowed money from her bank, rather than receiving the money from the Fund, Cherry would still be required to pay those monies to the bank on or before the agreed point in time. The fact that the money was owed to another person at the time the money was received from Farmers does not change the interaction between Farmers and Cherry. Farmers made a payment to Cherry, and Cherry received that payment. What Cherry does or does not do with the money once the payment is made cannot subsequently change the previous transaction between Cherry and Farmers. To find so defies logic. The majority also takes issue with the district court’s interpretation of the Farmer’s payment classifying the result as a “distortion of the word ‘paid’ beyond recognition.” In other words, even the majority agrees that section D(2)(b) is unambiguous and Farmer’s payment was properly deducted from the policy limits. I agree; the deduction is clearly and unambiguously established in the policy. It is difficult to understand how the majority can conclude that monies paid by the Fund and subject to its subrogation lien are not “paid” within the meaning of the policy, but somehow monies paid by Farmers subject to the same subrogation lien are “paid” pursuant to the policy. I cannot reconcile that glaring inconsistency. An insurance company is free to limit its liability as long as such limits do not offend public policy and those limits are clearly and unambiguously established within the four corners of the contractual policy.
Both parties make arguments on public policy grounds. However, it is well established in Idaho that the Idaho legislature has not established a public policy regarding underinsured motorist coverage. Meckert v. Transamerica Ins. Co., 108 Idaho 597, 600, 701 P.2d 217, 220 (1985). “Idaho statutes do not regulate underinsured motorist coverage .... [A] statute governing uninsured motorist coverage does not represent any public policy regarding underinsured motorist coverage. Underinsured and uninsured coverage are not identical in either definition or operation.” Andrae v. Idaho Counties Risk Management Program, Underwriters, 145 Idaho 33, 36, 175 P.3d 195, 198 (2007) (internal quotation omitted, citation omitted). “While such a policy might be desirable ... public policy should be enunciated by our legislature and not by this Court.” Meckert, 108 Idaho at 600, 701 P.2d at 220 (internal citation omitted).
For the foregoing reasons I would reverse the district court’s grant of summary judgment in favor of Cherry.

. "The [district court] finds that, ... [Cherry] has not been paid a sum by a third party [as] contemplated by section D(2)(b) of the addendum because [Cherry] has never been actually compensated by the money from Farmers.”

. Compare the provision in Reichert, which reads "[a]ny amount payable under this coverage shall be reduced by all sums paid or payable under any workers' compensation, disability benefits or similar law” with the Coregis policy, which reads "[a]ny amount payable under this coverage shall be reduced by [a]ll sums paid or payable under any workers’ compensation, disability benefits or similar law[.]" See Am. Foreign Ins. Co. v. Reichert, 140 Idaho 394, 399, 94 P.3d 699, 704 (2004).

. Reichert's complaint stemmed from an arbitration agreement which was entered into in early 2001. Reichert, 140 Idaho at 397, 94 P.3d at 702.

. It is noted that Reichert discussed an offset provision in relation to an uninsured motorist policy, whereas this case addresses an underinsured motorist policy. Uninsured motorist coverage is generally more stringently evaluated by the courts because Idaho has adopted legislation enforcing the coverage of uninsured motorist coverage. See Meckert v. Transamerica Ins. Co., 108 Idaho 597, 599-600, 701 P.2d 217, 219-20 (1985) (finding that the Idaho legislature has regulated uninsured motorist coverage, but no public policy exists for the regulation of underinsured motorist coverage.)

. “Any amounts otherwise payable for damages under this coverage will be reduced by: (a) All sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible.” Mutual of Enumclaw v. Box, 127 Idaho 851, 854, 908 P.2d 153, 155 (1995).